UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABIGAIL SHAUGHNESSY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NESPRESSO USA, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Abigail Shaughnessy ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Nespresso USA, Inc. ("Defendant") for the manufacture, marketing, and sale of consumer products that include espresso and coffee machines sold under the Nespresso Vertuo brand name (the "Products"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF ACTION

1. This is a class action against Defendant for the marketing, manufacture, and/or sale of consumer products (the "Products"), the warranties of which include statements that condition the continued validity of the warranties on the use of only an authorized repair service and/or authorized replacement parts (a "tying arrangement" or "unlawful repair restriction"). Tying arrangements that "state or imply that a consumer must buy or use an item or service from a particular company to keep their warranty coverage" violate state and federal law.[1] Here, in addition to unlawful restrictions against third-party parts and repair services, the Products'

---

[1] https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-law.

1

warranty states and/or implies that consumers need to purchase Nespresso Vertuo branded Coffee Capsules from Nespresso, at inflated prices, to keep their warranty coverage. Had Plaintiff – or other reasonable class members – been aware that the tying arrangement was unlawful, she would not have purchased the Product, or she would have paid significantly less for it.

2. Plaintiff brings her claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for: (i) violations of the Magnuson-Moss Warranty Act, (ii) unjust enrichment, (iii) fraud, (iv) fraudulent omission, and (v) declaratory judgement.

## PARTIES

3. Plaintiff Abigail Shaughnessy is, and at all times relevant to this action has been, a resident of Winthrop, Massachusetts and a citizen of Massachusetts. In or about July 2020, Ms. Shaughnessy purchased one Nespresso Vertuo Next Premium Coffee Machine for $121.54 from the Bed Bath & Beyond website, which shipped the Product to her home. Ms. Shaughnessy purchased the Product, reasonably believing its warranty complied with state and federal law. However, the Product Ms. Shaughnessy purchased did not comply with state and federal law because the unlawful tying arrangement attached to the warranty stated and/or implied that she would need to purchase Nespresso Vertuo branded Coffee Capsules from Nespresso to keep her warranty coverage. Ms. Shaughnessy would not have purchased the Product, or she would have paid significantly less for the Product, had she known that the Product did not comply with state and federal law. The warranty for the Product Ms. Shaughnessy purchased can be found at https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf.

4. Because of Defendant's written warranty, Ms. Shaughnessy purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices. She would have liked to use cheaper third-party coffee capsules, but her warranty, as written, implied that she was prohibited from doing so.

5. Defendant Nespresso USA, Inc. is a Delaware corporation with its principal place of business at 101 Park Ave, New York, NY 10178. Defendant markets and distributes the Products throughout the United States. Defendant sells its products to consumers on websites and retail stores nationwide.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

7. This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District and because Defendant's principal place of business is in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims took place within this District at Defendant's principal place of business.

## COMMON FACTUAL ALLEGATIONS

**I.     Defendant's Business Activities**

9. Defendant distributes consumer products to retailers throughout the United States, who then sell the appliances to consumers.

10. Defendant's products include espresso and coffee machines sold under the "Nespresso Vertuo" brand name.

11. All the relevant Products include the same unlawful repair restriction in their warranties.

12. Defendant has advertised, marketed, offered for sale, sold, and distributed products through authorized dealers to consumers.

13. Defendant's Products include a "written warranty" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty ("Warranty Statement").

14. The length of the limited warranty offered by Defendant is one year.

15. Defendant's limited warranty includes the aforementioned tying arrangement.

## II. Defendant Conditions Warranty Coverage On Purchasing First-Party Nespresso Vertuo Coffee Capsules, As Well As Additional Unlawful Repair Restrictions

16. In numerous instances, Defendant, through its warranty statements on the Products, conditions warranty coverage on the usage and purchase of Defendant's own Nespresso Vertuo Coffee Capsules, rather than allowing consumers to purchase cheaper third-party coffee capsules.

17. Specifically, Defendant's warranty states: "This appliance is designed for Nespresso Vertuo coffee capsules available exclusively through the Nespresso Club or your Nespresso authorized representative."[2]

---

[2] https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf.

4

18. Defendant's warranty also states the following: "Only use capsules intended for this appliance,"[3] and "This machine operates with Nespresso Vertuo capsules."[4]

19. Defendant's warranty also states, "This limited guarantee does not apply to any defect resulting from … failure to follow the product instructions … [or] unauthorized product modification or repair."[5]

20. In these passages, Defendant clearly implies that the full advantage of the Product's Warranty is only available to users who purchase expensive first party Nespresso Vertuo Coffee Capsules.

21. Under Defendant's warranty, Defendant, in effect, provides parts in a manner which impedes or precludes the choice by the consumer to perform necessary labor to install such parts.

22. By conditioning its warranty in this manner, Defendant has violated the tying prohibition in the Magnuson-Moss Warranty Act, which prohibits companies from conditioning their warranties on a consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

23. Defendant's practices also violate state laws, as well as Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1), which prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

**III.     The Magnuson-Moss Warranty Act**

24.     The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, is the federal law that regulates consumer warranties and the procedures used to resolve warranty disputes.  It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

25.     Section 2302(c) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(c), prohibits any warrantor from conditioning a warranty on the consumer's using, in connection with the warranted product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.

26.     An FTC Rule interpreting this provision specifically addresses warranty language (nearly identical to Defendant's warranty):

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)).  For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty.  These provisions violate the Act in two ways.  First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements.  Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c).

27.     The animating purpose of Magnuson-Moss's anti-tying provision was explained by then-FTC-Chairman Lewis Engman in the early 1970s in the run-up to the Act's introduction:

6

> This [anti-tying] provision addresses the anticompetitive practice which the Commission has opposed in numerous court actions wherein a manufacturer uses a warranty unreasonably to tie his supplementary products or services to the warranted product. This leaves the consumer in the undesirable posture of losing his warranty protection if he purchases the supplementary items from another and perhaps less expensive source—even if he does so in complete ignorance of the warranty's provisions.[6]

28. Finally, the FTC recently clarified that the disclaimer of liability does not need to be explicit. Instead, "a warrantor would violate the MMWA if its warranty led a reasonable consumer exercising due care to believe that the warranty conditioned coverage 'on the consumer's use of an article or service identified by brand, trade or corporate name.'"[7]

### IV. Section 5 Of The Federal Trade Commission Act

29. The FTC has found that a "manufacturer's use of a repair restriction could be challenged as an unfair practice under Section 5 of the FTC Act if the repair restriction causes substantial injury (e.g., monetary harm or unwarranted health and safety risks) that is not outweighed by countervailing benefits to consumers or competition that the practice produces, and the injury could not have been reasonably avoided by consumers."[8]

30. Per a 2021 FTC Report, "[e]ven when a warranty does not explicitly require that repairs be performed by the original equipment manufacturer (OEM) using OEM parts, many

---

[6] Statement of Hon. Lewis A. Engman, Chairman, Federal Trade Commission, included in H. Rep. No. 93-17, at 58 (1973).

[7] Final Action: Magnuson-Moss Warranty Act Interpretations; Rules Governing Disclosure of Written Consumer Product Warranty Terms and Conditions, Pre-Sale Availability of Written Warranty Terms, and Informal Dispute Settlement Procedures; and Ad Guides, Federal Trade Commission, 11 (May 22, 2015), https://www.ftc.gov/system/files/documents/federal_register_notices/2015/05/150522 mag-mossfrn.pdf).

[8] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 14.

manufacturers restrict independent repair and repair by consumers through [inter alia] Product designs that complicate or prevent repair; … Policies or statements that steer consumers to manufacturer repair networks; … [and] Disparagement of non-OEM parts and independent repair[.]"[9]

31. The 2021 FTC Report confirmed that MMWA-violative conduct was rampant in the marketplace:

> The Commission continues to receive reports of companies not complying with the MMWA. In response to staff's call for empirical research and comments related to the Workshop, several organizations reported that warranty tying continues to be prevalent in the marketplace. For example, the Education Fund of U.S. PIRG, the federation of state Public Interest Research Groups (PIRGs), submitted an October 2018 study analyzing warranties from 50 companies. U.S. PIRG concluded that 45 of the 50 companies had warranties that appeared to violate Section 102(c) of the MMWA. Likewise, the Specialty Equipment Market Association (SEMA) submitted a comment stating that it regularly receives complaints that automobile dealerships void automobile warranties if the dealership finds a specialty part (e.g., custom wheels) had been installed on the automobile, regardless of whether the specialty part caused the automobile to malfunction. Other commenters submitted information claiming that certain warrantors either expressly or by implication continue to condition warranty coverage of the use of particular products or services. … Tying is illegal where the effect is to impair competition and harm consumers in the market for either the tying product or the tied product.[10]

32. Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actions or practices, as well as unfair methods of competition, in or affecting commerce. Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct. *See, e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

---

[9] *Id.*, pg. 6.

[10] *Id.*, pg. 8.

33. The FTC has noted that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic waste, and unnecessarily increase wait times for repairs. In contrast, providing more choice in repairs can lead to lower costs, reduce e-waste by extending the useful lifespan of products, enable more timely repairs, and provide economic opportunities for entrepreneurs and local businesses."[11]

34. The FTC has issued several warning letters to companies that appeared to be engaged in warranty tying in violation of the Magnuson-Moss Warranty Act and has brought at least one enforcement action. *See e.g.* Exhibits 1-6.

35. This includes letters to companies that offer ostensibly free repairs under the warranty.

36. Microsoft, for example, was sent a compliance warning letter from the FTC for including a provision in the Xbox One warranty that stated that "Microsoft is not responsible and this warranty does not apply if Your Xbox One or Accessory is: ... (f) repaired by anyone other than Microsoft." *See* Exhibit 1. This is despite the warranty stating that "Microsoft will (at its option) repair or replace it, or refund the purchase price to You." *See* Exhibit 8, pg. 2.

37. In response to this enforcement letter, Microsoft updated their warranty to remove the offending provision.[12] [13]

---

[11] https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf, pg 1.

[12] https://www.ign.com/articles/2018/05/10/nintendo-and-sony-update-their-warranty-policies-following-ftc-warning (last accessed June 6, 2022).

[13] *See* exhibit 9 for Microsoft's updated warranty.

9

38. The FTC has concluded that "it is clear that repair restrictions … steered consumers into manufacturers' repair networks or to replace products before the end of their useful lives."[14]

39. The FTC has also expressed concern that tying arrangements "may place a greater financial burden on communities of color and lower-income Americans."[15]

40. While manufacturers explain that these tying arrangements often arise from their desire to protect intellectual property rights and prevent injuries and other negative consequences resulting from improper repairs, the FTC has found that such justifications "should be rejected if found to be a mere pretext for anticompetitive conduct."[16]

41. Here there is no justification for Defendant's tying arrangements since the technology inside many of Defendant's Products (such as its espresso and coffee machines) are well-known and simple.

42. Due to these factors, on July 21, 2021, the FTC unanimously voted to ramp up law enforcement against tying arrangements that prevent small businesses, workers, consumers, and even government entities from fixing their own products.[17]

## CLASS REPRESENTATION ALLEGATIONS

43. Plaintiff seeks to represent a class defined as all purchasers of Nespresso Vertuo branded products in the United States with warranty provisions that prohibit self-repair and/or the

---

[14] "Nixing the Fix: An FTC Report to Congress on Repair Restrictions", available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 6.

[15] *Id.* at 5.

[16] *Id.* at 10.

[17] https://www.ftc.gov/news-events/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions.

use of unauthorized parts (the "Class").  Excluded from the Class are persons who made such purchases for the purpose of resale.

44. Plaintiff also seeks to represent a subclass of all Class Members who purchased Nespresso Vertuo branded products in the Commonwealth of Massachusetts with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "Massachusetts Subclass") (collectively with the Class, the "Classes").

45. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

46. At this time, Plaintiff does not know the exact number of members of the aforementioned Class and Massachusetts Subclass ("Class Members" and "Subclass Members," respectively) but believes it numbers in the hundreds of thousands.  Given the size of the Defendant's operation and the number of retail stores in the United States selling Defendant's Products, Plaintiff believes that Class and Subclass Members are so numerous that joinder of all members is impracticable.

47. There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class Members include:

    (a) Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

    (b) whether Defendant's conduct was unfair and/or deceptive;

    (c) whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be

inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Classes;

(d) whether Plaintiff and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages;

(e) whether Defendant's conduct violates the Magnuson-Moss Warranty Act; and

(f) whether Defendant's conduct violates section 5 of the Federal Trade Commission Act.

48. Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Products, and Plaintiff sustained damages on account of Defendant's wrongful conduct.

49. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Classes.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the potentially low individual damages suffered by individual class members.

51. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

## COUNT I
**Violation Of The Magnuson-Moss Warranty Act,
15 U.S.C. §§ 2301, *et seq.***

52. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

53. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

54. The Products are consumer products as defined in 15 U.S.C. § 2301(1).

55. Plaintiff and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

56. Defendant is a supplier and warrantor as defined by the Warranty Act because it is a supplier or entity who gives or offers to give a written warranty or who are or may be obligated under an implied warranty. 15 U.S.C. § 2301(4) and (5).

57. No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). 16 CFR § 700.10(c).

58. In connection with the marketing and sale of the Product, Defendant has conditioned a warranty on the consumer's using, in connection with the warranted Product, with the use of only an authorized repair service and/or authorize replacement parts. 16 CFR § 700.10(c).

59. Specifically, Defendant's warranty states: "This appliance is designed for Nespresso Vertuo coffee capsules available exclusively through the Nespresso Club or your Nespresso authorized representative."[18]

60. Defendant's warranty also states the following: "Only use capsules intended for this appliance,"[19] and "This machine operates with Nespresso Vertuo capsules."[20]

61. Defendant's warranty also states, "This limited guarantee does not apply to any defect resulting from … failure to follow the product instructions … [or] unauthorized product modification or repair."[21]

62. In these passages, Defendant clearly implies that the full advantage of the Product's Warranty is only available to users who purchase expensive first party Nespresso Vertuo Coffee Capsules.

63. Additionally, warrantors offering a limited warranty that provides only for the replacement of defective parts and no portion of labor charges, are prohibited from conditioning that the consumer use only service (labor) identified by the warrantor to install the replacement parts.  A warrantor or her designated representative may not provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts.  16 C.F.R. § 700.10(b).

---

[18] https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf.

[19] *Id.*

[20] *Id.*

[21] *Id.*

64. Defendant also violates this provision by requiring that any modification of Defendant's products be performed with the authorization of Defendant, specifically stating, "Any servicing other than cleaning and user maintenance should be performed by an authorized service representative."[22]

65. By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby economically damaging Plaintiff and the Class and Subclass Members.

66. Plaintiff and the Class and Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the unlawful nature of the Products or would have paid substantially less for them.

67. Plaintiff and the Class and Subclass Members were also injured as a direct and proximate result of Defendant's breach because Defendant's breach caused Plaintiff and members of the Classes to purchase Nespresso Vertuo branded coffee capsules at inflated prices, rather than cheaper third-party coffee capsules.

## COUNT II
**Unjust Enrichment**

68. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

69. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

---

[22] https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf, pg 8.

70. Plaintiff and members of the Classes conferred benefits on Defendant by purchasing the Products.

71. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class and Subclass Members' purchases of the Product. Retention of those moneys under these circumstances is unjust and inequitable because Defendant did not disclose that the tying arrangement was unlawful and unenforceable. These omissions caused injuries to Plaintiff and Class and Subclass members because they would not have purchased the Products if the true facts were known or would have paid substantially less for the Products. Plaintiff and the Class and Subclass Members were also injured as a direct and proximate result of Defendant's omissions because Defendant's omissions caused Plaintiff and members of the Classes to purchase Nespresso Vertuo branded coffee capsules at inflated prices rather than cheaper third-party coffee capsules

72. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT III
**Fraud**

73. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

74. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

75. As discussed above, Defendant provided Plaintiff and members of the Classes with false or misleading material information about the Products.

76. Specifically, Defendant indicated to Plaintiff and members of the Classes that they would be unable to repair or use parts not authorized by Defendant on the products that they had

just purchased. Defendant knowingly added this provision in order to encourage Plaintiff and members of the Classes to purchase new Products and/or Nespresso Vertuo branded Coffee Capsules at inflated prices rather than purchase third-party coffee capsules.

77. Defendant misrepresented these unlawful tying arrangements as binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

78. These misrepresentations were made with knowledge of their falsehood.

79. The misrepresentations made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and members of the Classes to purchase Nespresso Vertuo branded coffee capsules that they otherwise would not have or at least pay substantially more for the coffee capsules than they would have.

80. The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes in the form of price premiums. Thus, Plaintiff and members of the Classes are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
### Fraudulent Omission

81. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

82. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

83. This claim is based on fraudulent omissions concerning the unlawfulness of the tying arrangements that are included in Defendant's warranties. As discussed above, Defendant failed to disclose that the Products' tying arrangements were unlawful and unenforceable.

84. The false and misleading omissions were made with knowledge of their falsehood. Defendant manufactures, markets, and sells consumer products nationwide and knows that the FTC has stated that tying arrangements of the type that appears on Defendant's warranty are unlawful. Nonetheless, Defendant continued to include its unlawful tying arrangements on its Products.

85. The false and misleading omissions were made by Defendant, upon which Plaintiff and members of the proposed Classes reasonably and justifiably relied, and were intended to induce, and actually induced, Plaintiff and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the Products than they otherwise would have.

86. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Classes, who are entitled to damages and punitive damages.

## COUNT V
### Declaratory Judgment

87. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

88. Plaintiff brings this claim individually and on behalf of members of the Classes against Defendant.

89. As described above, under Federal law it is unlawful for Defendant to condition the continued validity of a warranty on the use of only an authorized repair service and/or authorized replacement parts.

90. As currently written, Plaintiff cannot take full advantage of her Product's warranty without purchasing Nespresso Vertuo branded Coffee Capsules at inflated prices.

91. There is an actual controversy between the parties, requiring a declaratory judgment.

92. This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 *et seq.*, seeking a determination by the Court: (a) that this action may proceed and be maintained as a class action; (b) that Defendant's tying arrangements are void and unenforceable; (c) that an award of reasonable attorneys' fees and costs of suit to Plaintiff and the Class is appropriate; and such other and further relief as is necessary and just may be appropriate as well.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the nationwide Class and Massachusetts Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Massachusetts Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Massachusetts Subclass Members;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the nationwide Class, and the Massachusetts Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) An award of statutory penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of monetary relief; and

(h) For an order awarding Plaintiff, the Class, and the Massachusetts Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated:  August 10, 2022                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Julian C. Diamond*
          Julian C. Diamond

Julian C. Diamond
888 Seventh Ave, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Neal Deckant
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndeckant@bursor.com

*Attorneys for Plaintiff*