**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABIGAIL SHAUGHNESSY, ADITYA PATHAK, and KATHERINE ALEGRE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NESPRESSO USA, INC., <br><br> Defendant. | Case No.  1:22-cv-06815-NRB <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Abigail Shaughnessy, Aditya Pathak, and Katherine Alegre ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Nespresso USA, Inc. ("Defendant") for the manufacture, marketing, and sale of consumer products that include espresso and coffee machines sold under the Nespresso Vertuo brand name (the "Products").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF ACTION

1.       This is a class action against Defendant for the marketing, manufacture, and/or sale of consumer products (the "Products"), the warranties of which include statements that condition the continued validity of the warranties on the use of only an authorized repair service and/or authorized replacement parts (a "tying arrangement" or "unlawful repair restriction").  Tying arrangements that "state or imply that a consumer must buy or use an item or service from a particular company to keep their warranty coverage" violate state and federal law.[1]  Here, in

---

[1] https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-law.

addition to unlawful restrictions against third-party parts and repair services, the Products' warranty states and/or implies that consumers need to purchase Nespresso Vertuo branded Coffee Capsules from Nespresso, at inflated prices, to keep their warranty coverage.  Had Plaintiffs – or other reasonable class members – been aware that the tying arrangement was unlawful, they would not have purchased the Product, or they would have paid significantly less for it.

2.      Defendant's Vertuo branded Coffee Capsules, are approximately double the price per coffee capsule compared to competing brands of coffee capsules:

| Brand | Number of Coffee Capsules | Price | Price per Coffee Capsule |
|---|---|---|---|
| Nespresso Vertuo Coffee Pods | 30 | $36.00 | $1.20 per capsule |
| Dunkin' Espresso Bold Roast Coffee | 40 | $25.92 | $0.65 per capsule |
| Peet's Coffee, Dark Roast Espresso Capsules | 50 | $30.60 | $0.61 per capsule |
| L'OR Espresso Capsules | 50 | $32.50 | $0.65 per capsule |
| Lavazza Expert Espresso Aroma | 36 | $25.00 | $0.69 per capsule |

3.      Defendant's policies thus force consumers to purchase coffee capsules at almost double the price for an essentially identical product to keep their warranty coverage.

4.      The competing brands of coffee capsules described above are not compatible with the Products.

5.      In fact, there are no third-party coffee capsules which are compatible with the Products.

6.     In order to get third-party capsules to work with the Products, a user would need to modify the Products.  However, such modification is not permitted according to Defendant's warranty.

7.     Nespresso also previously manufactured another coffee machine that is referred to as the Nespresso Original Line Espresso Machine.  This product accepts third party coffee capsules.   Defendant sells first-party capsules that work with Original Line Espresso Machines (but do not work with Vertuo machines) for 75 cents per capsule (50 capsules for $37.50).  As shown above, Defendant sells Vertuo branded coffee capsules for 62.5% more.

8.     Plaintiffs bring their claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for: violations of the Magnuson-Moss Warranty Act, unjust enrichment, fraud, fraudulent omission, declaratory judgement, and violations of Massachusetts and New York consumer protection laws.

## PARTIES

9.     Plaintiff Abigail Shaughnessy is, and at all times relevant to this action has been, a resident of Winthrop, Massachusetts and a citizen of Massachusetts.  In or about July 2020, Ms. Shaughnessy purchased one Nespresso Vertuo Next Premium Coffee Machine for $121.54 from the Bed Bath & Beyond website, which shipped the Product to her home.  Ms. Shaughnessy purchased the Product, reasonably believing its warranty complied with state and federal law.  However, the Product Ms. Shaughnessy purchased did not comply with state and federal law because the unlawful tying arrangement attached to the warranty stated and/or implied that she would need to purchase Nespresso Vertuo branded Coffee Capsules from Nespresso to keep her warranty coverage.  Ms. Shaughnessy would not have purchased the Product, or she would have paid significantly less for the Product, had she known that the

Product did not comply with state and federal law.  The warranty for the Product Ms. Shaughnessy purchased can be found at https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf.

10.     Because of Defendant's written warranty, Ms. Shaughnessy purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices.  She would have liked to use cheaper third-party coffee capsules, but her warranty, as written, implied that she was prohibited from doing so.

11.     Plaintiff Aditya Pathak is, and at all times relevant to this action has been, a resident of Boston, Massachusetts and a citizen of Massachusetts.  In December 2021, Mr. Pathak purchased two Nespresso Vertuo Next Coffee Machines for $191.24 each from the Costco website, which shipped the Product to his home.  Mr. Pathak purchased the Product, reasonably believing its warranty complied with state and federal law.  However, the Product Mr. Pathak purchased did not comply with state and federal law because the unlawful tying arrangement attached to the warranty stated and/or implied that he would need to purchase Nespresso Vertuo branded Coffee Capsules from Nespresso to keep his warranty coverage.  Mr. Pathak would not have purchased the Product, or he would have paid significantly less for the Product, had he known that the Product did not comply with state and federal law.  The warranty for the Product Mr. Pathak purchased can be found at https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf.

12.     Because of Defendant's written warranty, Mr. Pathak purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices.  He would have liked to use

cheaper third-party coffee capsules, but his warranty, as written, implied that he was prohibited from doing so.

13.     Plaintiff Katherine Alegre is, and at all times relevant to this action has been, a resident of the Bronx, New York and a citizen of New York.  On November 22, 2021, Ms. Alegre purchased one Nespresso Vertuo Next Premium Coffee Machine for $188.34 from the Macy's website, which shipped the Product to her home.  Ms. Alegre purchased the Product, reasonably believing its warranty complied with state and federal law.  However, the Product Ms. Alegre purchased did not comply with state and federal law because the unlawful tying arrangement attached to the warranty stated and/or implied that she would need to purchase Nespresso Vertuo branded Coffee Capsules from Nespresso to keep her warranty coverage.  Ms. Alegre would not have purchased the Product, or she would have paid significantly less for the Product, had she known that the Product did not comply with state and federal law.  The warranty for the Product Ms. Alegre purchased can be found at https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf.

14.     Because of Defendant's written warranty, Ms. Alegre purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices.  She would have liked to use cheaper third-party coffee capsules, but her warranty, as written, implied that she was prohibited from doing so.

15.     Defendant Nespresso USA, Inc. is a Delaware corporation with its principal place of business at 101 Park Ave, New York, NY 10178.  Defendant markets and distributes the Products throughout the United States.  Defendant sells its products to consumers on websites and retail stores nationwide.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(d) because there are more than 100 class members and the aggregate amount in

controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class

member is a citizen of a state different from Defendant.

17.     This Court has personal jurisdiction over Defendant because a substantial portion

of the events that gave rise to Plaintiffs' claims occurred in this District and because Defendant's

principal place of business is in this District.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

portion of the events giving rise to Plaintiffs' claims took place within this District at

Defendant's principal place of business.

## COMMON FACTUAL ALLEGATIONS

### I.      Defendant's Business Activities

19.     Defendant distributes consumer products to retailers throughout the United States,

who then sell the appliances to consumers.

20.     Defendant's products include espresso and coffee machines sold under the

"Nespresso Vertuo" brand name.

21.     All the relevant Products include the same unlawful repair restriction in their

warranties.

22.     Defendant has advertised, marketed, offered for sale, sold, and distributed

products through authorized dealers to consumers.

23.     Defendant's Products include a "written warranty" as defined by the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty ("Warranty

Statement").

24.     The length of the limited warranty offered by Defendant is one year.

25.     Defendant's limited warranty includes the aforementioned tying arrangement.

## II.     Defendant Conditions Warranty Coverage On Purchasing First-Party Nespresso Vertuo Coffee Capsules, As Well As Additional Unlawful Repair Restrictions

26.     In numerous instances, Defendant, through its warranty statements on the Products, conditions warranty coverage on the usage and purchase of Defendant's own Nespresso Vertuo Coffee Capsules, rather than allowing consumers to purchase cheaper third-party coffee capsules.

27.     Specifically, Defendant's warranty states: "This appliance is designed for Nespresso Vertuo coffee capsules available exclusively through the Nespresso Club or your Nespresso authorized representative."[2]

28.     Defendant's warranty also states the following: "Only use capsules intended for this appliance,"[3] and "This machine operates with Nespresso Vertuo capsules."[4]

29.     Defendant's warranty also states, "This limited guarantee does not apply to any defect resulting from … failure to follow the product instructions … [or] unauthorized product modification or repair."[5]

30.     In these passages, Defendant clearly implies that the full advantage of the Product's Warranty is only available to users who purchase expensive first party Nespresso Vertuo Coffee Capsules.

---

[2] https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf.

[3] *Id.*

[4] *Id.*

[5] *Id.*

31.     Under Defendant's warranty, Defendant, in effect, provides parts in a manner which impedes or precludes the choice by the consumer to perform necessary labor to install such parts.

32.     By conditioning its warranty in this manner, Defendant has violated the tying prohibition in the Magnuson-Moss Warranty Act, which prohibits companies from conditioning their warranties on a consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

33.     Defendant's practices also violate state laws, as well as Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1), which prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.

## III.    The Magnuson-Moss Warranty Act

34.     The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, is the federal law that regulates consumer warranties and the procedures used to resolve warranty disputes.  It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

35.     Section 2302(c) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(c), prohibits any warrantor from conditioning a warranty on the consumer's using, in connection with the warranted product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.

36. An FTC Rule interpreting this provision specifically addresses warranty language

(nearly identical to Defendant's warranty):

> No warrantor may condition the continued validity of a warranty
> on the use of only authorized repair service and/or authorized
> replacement parts for non-warranty service and maintenance (other
> than an article of service provided without charge under the
> warranty or unless the warrantor has obtained a waiver pursuant to
> section 102(c) of the Act, 15 U.S.C. 2302(c)).  For example,
> provisions such as, "This warranty is void if service is performed
> by anyone other than an authorized 'ABC' dealer and all
> replacement parts must be genuine 'ABC' parts," and the like, are
> prohibited where the service or parts are not covered by the
> warranty.  These provisions violate the Act in two ways.  First,
> they violate the section 102(c), 15 U.S.C. 2302(c), ban against
> tying arrangements.  Second, such provisions are deceptive under
> section 110 of the Act, 15 U.S.C. 2310, because a warrantor
> cannot, as a matter of law, avoid liability under a written warranty
> where a defect is unrelated to the use by a consumer of
> "unauthorized" articles or service.

16 CFR § 700.10(c).

37. The animating purpose of Magnuson-Moss's anti-tying provision was explained

by then-FTC-Chairman Lewis Engman in the early 1970s in the run-up to the Act's introduction:

> This [anti-tying] provision addresses the anticompetitive practice
> which the Commission has opposed in numerous court actions
> wherein a manufacturer uses a warranty unreasonably to tie his
> supplementary products or services to the warranted product. This
> leaves the consumer in the undesirable posture of losing his
> warranty protection if he purchases the supplementary items from
> another and perhaps less expensive source—even if he does so in
> complete ignorance of the warranty's provisions.[6]

38. Finally, the FTC recently clarified that the disclaimer of liability does not need to

be explicit. Instead, "a warrantor would violate the MMWA if its warranty led a reasonable

---

[6] Statement of Hon. Lewis A. Engman, Chairman, Federal Trade Commission, included in H.
Rep. No. 93-17, at 58 (1973).

consumer exercising due care to believe that the warranty conditioned coverage 'on the consumer's use of an article or service identified by brand, trade or corporate name.'"[7]

## IV.    Section 5 Of The Federal Trade Commission Act

39.    The FTC has found that a "manufacturer's use of a repair restriction could be challenged as an unfair practice under Section 5 of the FTC Act if the repair restriction causes substantial injury (e.g., monetary harm or unwarranted health and safety risks) that is not outweighed by countervailing benefits to consumers or competition that the practice produces, and the injury could not have been reasonably avoided by consumers."[8]

40.    Per a 2021 FTC Report, "[e]ven when a warranty does not explicitly require that repairs be performed by the original equipment manufacturer (OEM) using OEM parts, many manufacturers restrict independent repair and repair by consumers through [inter alia] Product designs that complicate or prevent repair; … Policies or statements that steer consumers to manufacturer repair networks; … [and] Disparagement of non-OEM parts and independent repair[.]"[9]

41.    The 2021 FTC Report confirmed that MMWA-violative conduct was rampant in the marketplace:

> The Commission continues to receive reports of companies not complying with the MMWA. In response to staff's call for empirical research and comments related to the Workshop, several

---

[7] Final Action: Magnuson-Moss Warranty Act Interpretations; Rules Governing Disclosure of Written Consumer Product Warranty Terms and Conditions, Pre-Sale Availability of Written Warranty Terms, and Informal Dispute Settlement Procedures; and Ad Guides, Federal Trade Commission, 11 (May 22, 2015), https://www.ftc.gov/system/files/documents/federal_register_notices/2015/05/150522 mag-mossfrn.pdf).

[8] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 14.

[9] *Id.*, pg 6.

organizations reported that warranty tying continues to be prevalent in the marketplace. For example, the Education Fund of U.S. PIRG, the federation of state Public Interest Research Groups (PIRGs), submitted an October 2018 study analyzing warranties from 50 companies. U.S. PIRG concluded that 45 of the 50 companies had warranties that appeared to violate Section 102(c) of the MMWA. Likewise, the Specialty Equipment Market Association (SEMA) submitted a comment stating that it regularly receives complaints that automobile dealerships void automobile warranties if the dealership finds a specialty part (e.g., custom wheels) had been installed on the automobile, regardless of whether the specialty part caused the automobile to malfunction. Other commenters submitted information claiming that certain warrantors either expressly or by implication continue to condition warranty coverage of the use of particular products or services. … Tying is illegal where the effect is to impair competition and harm consumers in the market for either the tying product or the tied product.[10]

42.     Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actions or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.  *See*, *e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

43.     The FTC has noted that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic waste, and unnecessarily increase wait times for repairs.  In contrast, providing more choice in repairs can lead to lower costs, reduce e-waste by extending the useful lifespan of products, enable more timely repairs, and provide economic opportunities for entrepreneurs and local businesses."[11]

---

[10] *Id.*, pg 8.
[11] https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf, pg 1.

44.     The FTC has issued several warning letters to companies that appeared to be engaged in warranty tying in violation of the Magnuson-Moss Warranty Act and has brought at least one enforcement action.  *See e.g.* Exhibits 1-6.

45.     This includes letters to companies that offer ostensibly free repairs under the warranty.

46.     Microsoft, for example, was sent a compliance warning letter from the FTC for including a provision in the Xbox One warranty that stated that "Microsoft is not responsible and this warranty does not apply if Your Xbox One or Accessory is: ... (f) repaired by anyone other than Microsoft."  *See* Exhibit 1.  This is despite the warranty stating that "Microsoft will (at its option) repair or replace it, or refund the purchase price to You."  *See* Exhibit 7, pg. 2.

47.     In response to this enforcement letter, Microsoft updated their warranty to remove the offending provision.[12] [13]

48.     The FTC has concluded that "it is clear that repair restrictions … steered consumers into manufacturers' repair networks or to replace products before the end of their useful lives."[14]

49.     The FTC has also expressed concern that tying arrangements "may place a greater financial burden on communities of color and lower-income Americans."[15]

---

[12] https://www.ign.com/articles/2018/05/10/nintendo-and-sony-update-their-warranty-policies-following-ftc-warning (last accessed June 6, 2022).

[13] *See* exhibit 8 for Microsoft's updated warranty.

[14] "Nixing the Fix: An FTC Report to Congress on Repair Restrictions", available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 6.

[15] *Id.* at 5.

50.     While manufacturers explain that these tying arrangements often arise from their desire to protect intellectual property rights and prevent injuries and other negative consequences resulting from improper repairs, the FTC has found that such justifications "should be rejected if found to be a mere pretext for anticompetitive conduct."[16]

51.     Here there is no justification for Defendant's tying arrangements since the technology inside many of Defendant's Products (such as its espresso and coffee machines) are well-known and simple.

52.     Due to these factors, on July 21, 2021, the FTC unanimously voted to ramp up law enforcement against tying arrangements that prevent small businesses, workers, consumers, and even government entities from fixing their own products.[17]

## CLASS REPRESENTATION ALLEGATIONS

53.     Plaintiffs seek to represent a class defined as all purchasers of Nespresso Vertuo branded products in the United States with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "Class").  Excluded from the Class are persons who made such purchases for the purpose of resale.

54.     Plaintiff Shaughnessy  and Plaintiff Pathak also seek to represent a subclass of all Class Members who purchased Nespresso Vertuo branded products in the Commonwealth of Massachusetts with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "Massachusetts Subclass")

55.     Plaintiff Alegre also seeks to represent a subclass of all Class Members who purchased Nespresso Vertuo branded products in the State of New York with warranty

---

[16] *Id.* at 10.

[17] https://www.ftc.gov/news-events/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions.

provisions that prohibit self-repair and/or the use of unauthorized parts (the "New York Subclass") (collectively with the Class and Massachusetts Subclass, the "Classes").

56.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

57.     At this time, Plaintiffs do not know the exact number of members of the aforementioned Class and Massachusetts Subclass ("Class Members" and "Subclass Members," respectively) but believes it numbers in the hundreds of thousands.  Given the size of the Defendant's operation and the number of retail stores in the United States selling Defendant's Products, Plaintiffs believe that Class and Subclass Members are so numerous that joinder of all members is impracticable.

58.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class Members include:

(a)     Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(b)     whether Defendant's conduct was unfair and/or deceptive;

(c)     whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Classes;

(d)   whether Plaintiffs and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages;

(e)   whether Defendant's conduct violates the Magnuson-Moss Warranty Act; and

(f)   whether Defendant's conduct violates section 5 of the Federal Trade Commission Act.

59.   Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Products, and Plaintiffs sustained damages on account of Defendant's wrongful conduct.

60.   Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with those of the Classes.

61.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the potentially low individual damages suffered by individual class members.

62.   The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

**COUNT I**
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***

63.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

64.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

65.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

66.     Plaintiffs and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

67.     Defendant is a supplier and warrantor as defined by the Warranty Act because it is a supplier or entity who gives or offers to give a written warranty or who are or may be obligated under an implied warranty.  15 U.S.C. § 2301(4) and (5).

68.     No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)).  16 CFR § 700.10(c).

69.     In connection with the marketing and sale of the Product, Defendant has conditioned a warranty on the consumer's using, in connection with the warranted Product, with the use of only an authorized repair service and/or authorize replacement parts. 16 CFR § 700.10(c).

70.     Specifically, Defendant's warranty states: "This appliance is designed for Nespresso Vertuo coffee capsules available exclusively through the Nespresso Club or your Nespresso authorized representative."[18]

71.     Defendant's warranty also states the following: "Only use capsules intended for this appliance,"[19] and "This machine operates with Nespresso Vertuo capsules."[20]

72.     Defendant's warranty also states, "This limited guarantee does not apply to any defect resulting from … failure to follow the product instructions … [or] unauthorized product modification or repair."[21]

73.     In these passages, Defendant clearly implies that the full advantage of the Product's Warranty is only available to users who purchase expensive first party Nespresso Vertuo Coffee Capsules.

74.     Additionally, warrantors offering a limited warranty that provides only for the replacement of defective parts and no portion of labor charges, are prohibited from conditioning that the consumer use only service (labor) identified by the warrantor to install the replacement parts.  A warrantor or her designated representative may not provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts.  16 C.F.R. § 700.10(b).

---

[18] https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf.

[19] *Id.*

[20] *Id.*

[21] *Id.*

75.     Defendant also violates this provision by requiring that any modification of Defendant's products be performed with the authorization of Defendant, specifically stating, "Any servicing other than cleaning and user maintenance should be performed by an authorized service representative."[22]

76.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiffs and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby economically damaging Plaintiffs and the Class and Subclass Members.

77.     Plaintiffs and the Class and Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the unlawful nature of the Products or would have paid substantially less for them.

78.     Plaintiffs and the Class and Subclass Members were also injured as a direct and proximate result of Defendant's breach because Defendant's breach caused Plaintiffs and members of the Classes to purchase Nespresso Vertuo branded coffee capsules at inflated prices, rather than cheaper third-party coffee capsules.

## COUNT II
## Unjust Enrichment

79.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

80.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

---

[22] https://www.nespresso.com/shared_res/mos/docs/us/US_VERTUO_NEXT_USER_MANUAL.pdf, pg 8.

81.     Plaintiffs and members of the Classes conferred benefits on Defendant by purchasing the Products.

82.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class and Subclass Members' purchases of the Product.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant did not disclose that the tying arrangement was unlawful and unenforceable.  These omissions caused injuries to Plaintiffs and Class and Subclass members because they would not have purchased the Products if the true facts were known or would have paid substantially less for the Products.  Plaintiffs and the Class and Subclass Members were also injured as a direct and proximate result of Defendant's omissions because Defendant's omissions caused Plaintiffs and members of the Classes to purchase Nespresso Vertuo branded coffee capsules at inflated prices rather than cheaper third-party coffee capsules

83.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT III
### Fraud

84.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

85.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

86.     As discussed above, Defendant provided Plaintiffs and members of the Classes with false or misleading material information about the Products.

87.     Specifically, Defendant indicated to Plaintiffs and members of the Classes that they would be unable to repair or use parts not authorized by Defendant on the products that they had just purchased.  Defendant knowingly added this provision in order to encourage Plaintiffs and members of the Classes to purchase new Products and/or Nespresso Vertuo branded Coffee Capsules at inflated prices rather than purchase third-party coffee capsules.

88.     Defendant misrepresented these unlawful tying arrangements as binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

89.     These misrepresentations were made with knowledge of their falsehood.

90.     The misrepresentations made by Defendant, upon which Plaintiffs and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and members of the Classes to purchase Nespresso Vertuo branded coffee capsules that they otherwise would not have or at least pay substantially more for the coffee capsules than they would have.

91.     The fraudulent actions of Defendant caused damage to Plaintiffs and members of the Classes in the form of price premiums.  Thus, Plaintiffs and members of the Classes are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
**Fraudulent Omission**

92.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

93.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

94.     This claim is based on fraudulent omissions concerning the unlawfulness of the tying arrangements that are included in Defendant's warranties.  As discussed above, Defendant failed to disclose that the Products' tying arrangements were unlawful and unenforceable.

95.     The false and misleading omissions were made with knowledge of their falsehood.  Defendant manufactures, markets, and sells consumer products nationwide and knows that the FTC has stated that tying arrangements of the type that appears on Defendant's warranty are unlawful.  Nonetheless, Defendant continued to include its unlawful tying arrangements on its Products.

96.     The false and misleading omissions were made by Defendant, upon which Plaintiffs and members of the proposed Classes reasonably and justifiably relied, and were intended to induce, and actually induced, Plaintiffs and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the Products and capsules than they otherwise would have.

97.     The fraudulent actions of Defendant caused damage to Plaintiffs and members of the proposed Classes, who are entitled to damages and punitive damages.

## COUNT V
### Declaratory Judgment

98.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

99.     Plaintiffs bring this claim individually and on behalf of members of the Classes against Defendant.

100.    As described above, under Federal law it is unlawful for Defendant to condition the continued validity of a warranty on the use of only an authorized repair service and/or authorized replacement parts.

101.    As currently written, Plaintiffs cannot take full advantage of their Products'
warranty without purchasing Nespresso Vertuo branded Coffee Capsules at inflated prices.

102.    There is an actual controversy between the parties, requiring a declaratory
judgment.

103.    This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 *et
seq.*, seeking a determination by the Court: (a) that this action may proceed and be maintained as
a class action; (b) that Defendant's tying arrangements are void and unenforceable; (c) that an
award of reasonable attorneys' fees and costs of suit to Plaintiffs and the Class is appropriate;
and such other and further relief as is necessary and just may be appropriate as well.

### COUNT VI
**Violation of the Massachusetts Unfair and Deceptive Business Practices Act,
Mass. Gen. Laws Ch. 93A *et seq.***

104.    Plaintiffs incorporate by reference and re-allege each and every allegation set
forth above as though fully set forth herein.

105.    Plaintiff Shaughnessy and Plaintiff Pathak bring this claim individually and on
behalf of the members of the Massachusetts Subclass against Defendant.

106.    Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business
Practices Act ("MUDBPA")—prevents the use of "unfair or deceptive acts or practices in the
conduct of any trade or commerce."  An act is "deceptive" under Chapter 93A "if it could
reasonably be found to have caused a person to act differently from the way he otherwise would
have acted."  *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

107.    It is "the intent of the legislature that in construing" whether an act is deceptive
under 93A § 2, "the courts will be guided by the interpretations given by the Federal Trade

Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15

U.S.C. 45(a)(1)), as from time to time amended." *See* Mass. Gen. Laws Ann. ch. 93A, § 2.

108.   An act or practice is a violation of MUDBPA if it "violates the Federal Trade

Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer

protection statutes within the purview of M.G.L. c. 93A, § 2."  940 CMR 3.16.

109.   Section 9 provides: "Any person … who has been injured by another person's use

or employment of any method, act or practice declared to be unlawful by section two … may

bring an action in the superior court … for damages and such equitable relief, including an

injunction, as the court deems to be necessary and proper … Any persons entitled to bring such

action may, if the use or employment of the unfair or deceptive act or practice has caused similar

injury to numerous other persons similarly situated and if the court finds in a preliminary hearing

that he adequately and fairly represents such other persons, bring the action on behalf of herself

and such other similarly injured and situated persons."

110.   Pursuant to the definitions codified at Chapter 93A § 1, Defendant is a "person,"

and Defendant is engaged in "trade" and "commerce" in Massachusetts by offering for sale

Products that directly or indirectly affect the people of Massachusetts.

111.   By engaging in the acts and omissions alleged above and incorporated herein,

Defendant has engaged and continues to engage in unfair or deceptive acts or practices in the

conduct of trade or commerce.

112.   Defendant's misrepresentations deceive and have a tendency to deceive a

reasonable consumer and the general public.

113.   Defendant's acts and omissions are material, in that a reasonable person would

attach importance to the information and would be induced to act on the information in making

purchase decisions.

114.     Defendant has also committed a violation of MUDBPA predicated on its violations of FTC regulations – specifically, its violation of Section 5 of the FTC Act as interpreted by the Federal Trade commission.

115.     Defendant has also committed a violation of MUDBPA predicated on its violation of the Magnuson-Moss Warranty Act, which is a federal consumer protection statute within the purview of M.G.L. c. 93A, § 2.

116.     Plaintiff Shaughnessy and Plaintiff Pathak and members of the Massachusetts Subclass reasonably relied upon and were deceived by Defendant's warranty policies.

117.     Defendant knowingly mispresented that the Products' warranties complied with Federal and Massachusetts law.

118.     Had Plaintiff Shaughnessy, Plaintiff Pathak, and Massachusetts Subclass members known that the Products' warranty included an unlawful repair restriction, they would either not have purchased the Products, or would have paid less for them.

119.     Plaintiff Shaughnessy, Plaintiff Pathak, and the Massachusetts Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the deceptive nature of the Products or would have paid substantially less for them.  Plaintiff Shaughnessy, Plaintiff Pathak, and Massachusetts Subclass Members were also injured because they purchased Nespresso Coffee Capsules at inflated prices.

120.     Plaintiff Shaughnessy, Plaintiff Pathak, and members of the Massachusetts Subclass have been harmed by this injury, adverse consequence, and/or loss.

121.     The MUDBPA represents a fundamental public policy of the Commonwealth of

Massachusetts.

122.    For each loss, Plaintiff Shaughnessy, Plaintiff Pathak, and each member of the Massachusetts Subclass may recover an award of actual damages or twenty-five dollars, whichever is greater.  Ch. 93A § 9(3).

123.    Because Defendant acted willfully or knowingly, Plaintiff Shaughnessy, Plaintiff Pathak, and each member of the Massachusetts Subclass may recover up to three but not less than two times this amount.  In addition, Plaintiff Shaughnessy and Plaintiff Pathak may recover attorneys' fees and costs.

124.    Plaintiff Shaughnessy, Plaintiff Pathak and the members of the Massachusetts Subclass may also seek the imposition of an injunction relief which limits and polices Defendant's representations within or reaching Massachusetts.  The balance of the equities favors the entry of permanent injunctive relief against Defendant.  Plaintiff Shaughnessy, Plaintiff Pathak, members of the Massachusetts Subclass, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant.  Plaintiff Shaughnessy, Plaintiff Pathak, members of the Massachusetts Subclass, and the general public lack an adequate remedy at law.  A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

125.    In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), on January 28, 2022, Plaintiff Shaughnessy and Plaintiff Pathak's counsel served Defendant with written notice of its violation of Ch. 93A and a demand for relief.  A true and correct copy of the letter is attached hereto as **Exhibit 9**.  Defendant did not make a written tender of settlement for the putative class.

<u>COUNT VII</u>
**Deceptive Acts Or Practices, New York Gen. Bus. Law § 349**

126.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

127.    Plaintiff Alegre brings this claim individually and on behalf of members of the New York Subclass against Defendant.

128.    By the acts and conduct alleged herein, Defendant committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendant's warranties.  As discussed above, Defendant failed to disclose that the Products' repair restriction was unlawful and unenforceable.

129.    The foregoing deceptive acts and practices were directed at consumers.

130.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

131.    Defendant's conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

132.    Plaintiff Alegre and New York Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the unlawful nature of the Products or would have paid substantially less for them.  Plaintiff Alegre and New York Subclass Members were also injured because they purchased Nespresso Coffee Capsules at inflated prices.

133.    On behalf of herself and other members of the New York Subclass, Plaintiff Alegre seeks to enjoin the unlawful acts and practices described herein, to recover their actual

damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)　For an order certifying the nationwide Class, Massachusetts Subclass, and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent the members of the Classes;

(b)　For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)　For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)　For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)　An award of statutory penalties to the extent available;

(f)　For pre-judgment interest on all amounts awarded;

(g)　For an order of restitution and all other forms of monetary relief; and

(h)　For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury of all issues so triable.

Dated:  December 15, 2022                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Julian C. Diamond*
                    Julian C. Diamond

Julian C. Diamond
888 Seventh Ave, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Neal Deckant
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndeckant@bursor.com

*Attorneys for Plaintiffs*