**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABIGAIL SHAUGHNESSY, ADITYA PATHAK, and KATHERINE ALEGRE, individually and on behalf of all others similarly situated, | Case No.  1:22-cv-06815-NRB |
| Plaintiffs, | Hon. Judge Naomi Reice Buchwald |
| v. | |
| NESPRESSO USA, INC., | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**BURSOR & FISHER, P.A.**
Julian C. Diamond
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I. PLAINTIFFS POSSESS STANDING UNDER ARTICLE III...........................2

II. CAFA PROVIDES AN ALTERNATE BASIS FOR JURISDICTION OVER PLAINTIFFS' MMWA CLAIMS ...................................................................5

III. PLAINTIFFS HAVE STATED A CLAIM UNDER THE MMWA.......................7

    A.    Defendant Conditioned Its Limited Warranty Coverage On Use Of Nespresso Brand Articles Or Services .....................................................7

    B.    Defendant Implicitly Ties The Continuing Validity Of The Limited Warranty On The Purchase Of Defendant's First Party Overpriced Coffee Pods ...........................................................................................11

    C.    Defendant's Violations Of The MMWA Have Injured Plaintiffs .........13

IV. PLAINTIFFS HAVE STATED A CLAIM UNDER STATE CONSUMER PROTECTION STATUTES.........................................................................14

    A.    Plaintiffs Have Adequately Pled Violative Conduct .............................14

    B.    Plaintiffs Have Pled Injury Under State Consumer Protection Statutes ...............16

V. PLAINTIFFS' ALLEGATIONS OF FALSE REPRESENTATIONS MEET THE PARTICULARITY REQUIREMENTS UNDER RULE 9(B)..............................18

    A.    Plaintiffs' Cause of Action For Fraud Meets The Requirements Of Rule 9(B).............................................................................................18

    B.    Plaintiffs Have Stated a Claim For Fraudulent Omission......................19

VI. PLAINTIFFS HAVE PLED A CLAIM FOR UNJUST ENRICHMENT IN THE ALTERNATIVE ...................................................................................20

VII. PLAINTIFFS' CLASS ALLEGATIONS SHOULD NOT BE STRICKEN....................21

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amusement Indus., Inc. v. Stern*,
  693 F. Supp. 2d 327 (S.D.N.Y. 2010) ........................................................................ 18

*Axon v. Florida's Nat. Growers, Inc.*,
  813 F. App'x 701 (2d Cir. 2020) ........................................................................... 2, 21

*Bernstein v. Cengage Learning Inc.*,
  2020 WL 5819862 (S.D.N.Y. Sept. 29, 2020) ........................................................ 22

*Bildstein v. MasterCard Int'l, Inc.*,
  2005 WL 1324972 (S.D.N.Y. 2005) ....................................................................... 15

*Brady v. Basic Rsch., L.L.C.*,
  101 F. Supp. 3d 217 (E.D.N.Y. 2015) .................................................................... 14

*Chenensky v. N.Y. Life Ins. Co.*,
  2011 WL 1795305 (S.D.N.Y. 2015) ....................................................................... 21

*Chiarelli v. Nissan N. Am., Inc.*,
  2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) ....................................................... 15

*Colpitts v. Blue Diamond Growers*,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021) ...................................................................... 2

*Cooper v. Anheuser-Busch, LLC*,
  2021 WL 3501203 (S.D.N.Y. Aug. 9, 2021)........................................................... 13

*Dayan v. Swiss-American Products, Inc.*,
  2017 WL 9485702 (E.D.N.Y. Jan. 3, 2017).............................................................. 6

*Dennis v. JPMorgan Chase & Co.*,
  343 F. Supp. 3d 122 (S.D.N.Y. 2018) .................................................................... 18

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014).............................................................................. 23

*Elias v. Ungar's Food Products, Inc.*,
  252 F.R.D. 233 (D.N.J. June 30, 2008) ................................................................... 23

*Field v. Mans*,
  516 U.S. 59 (1995) .................................................................................................. 20

*Fishon v. Peloton Interactive, Inc.*,
  2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020)........................................................... 17

*Ford v. Rensselaer Polytechnic Institute*,
  507 F. Supp. 3d 406 (N.D.N.Y. 2020)................................................................ 21

*Gomez-Jimenez v. New York L. Sch.*,
  956 N.Y.S.2d 54 (App. Div. 2012)...................................................................... 15

*Gordon & Co. v. Ross*,
  84 F.3d 542 (2d Cir. 1996) .................................................................................. 20

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017)........................................................ 24

*Hobbs v. Knight-Swift Transp. Holdings, Inc.*,
  2022 WL 118256 (S.D.N.Y. Jan. 12, 2022) ........................................................ 23

*Wine Enthusiast, Inc. v. Vinotemp Int'l Corp.*,
  317 F. Supp. 3d 795 (S.D.N.Y. 2018) ................................................................... 4

*In re Amla Litig.*,
  282 F. Supp. 3d 751 (S.D.N.Y. 2017) ................................................................. 17

*In re Dial Complete Mktg. and Sales Pracs. Litig.*,
  312 F.R.D. 36 (D.N.H. 2015) .............................................................................. 24

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .................................................... 12

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015).......................................................................... 24

*In re Tronox Sec. Litig.*,
  2010 WL 2835545 (S.D.N.Y. June 28, 2010) ..................................................... 21

*Lass v. Bank of Am., N.A.*,
  695 F.3d 129 (1st Cir. 2012)................................................................................ 21

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2nd Cir. 2006) .............................................................................. 18

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
  2018 WL 679477 (N.D.N.Y. Feb. 1, 2018).................................................... 22, 23

*Maywalt v. Parker & Parsley Petroleum Co.*,
  147 F.R.D. 51 (S.D.N.Y.1993).............................................................................. 23

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
  775 F.3d 109 (1st Cir. 2014)................................................................................ 16

iii

*McGarvey v. Penske Auto. Grp., Inc.*,
  2011 WL 1325210 (D.N.J. Mar. 31, 2011) ............................................................ 13

*McGee v. Cont'l Tire N. Am., Inc.*,
  2007 WL 2462624 (D.N.J. Aug. 27, 2007) ............................................................ 6

*Monahan v. New York City Dep't of Corr.*,
  214 F.3d 275 (2d Cir. 2000) ............................................................................... 25

*Ortiz v. Sig Sauer, Inc.*,
  448 F. Supp. 3d 89 (D.N.H. 2020) ....................................................................... 22

*Parker v. Time Warner Ent. Co., L.P.*,
  331 F.3d 13 (2nd Cir. 2003) ................................................................................ 23

*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp. 3d 503 (S.D.N.Y. 2015) .................................................................. 21

*Richardson v. Stanley Works, Inc.*,
  597 F.3d 1288 (Fed. Cir. 2010) ............................................................................. 4

*Rickerson v. Pinnacle Foods Inc.*,
  2017 WL 6034147 (D.N.J. Dec. 6, 2017) ............................................................. 18

*Ross v. Citigroup, Inc.*,
  630 F. App'x 79 (2d Cir. 2015) .............................................................................. 3

*Rossi v. Procter & Gamble Co.*,
  2012 WL 12914668 (D.N.J. July 10, 2012) ............................................................ 6

*Sanford Inst. for Sav. v. Gallo*,
  156 F.3d 71 (1st Cir. 1998) ................................................................................. 20

*Shaw v. Hornblower Cruises & Events, LLC*,
  2022 WL 16748584 (S.D.N.Y. Nov. 7, 2022) ....................................................... 22

*Small v. Lorillard Tobacco Co.*,
  94 N.Y.2d 43 (1999) ....................................................................................... 16, 17

*Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*,
  131 F.3d 874 (10th Cir. 1997) ............................................................................... 4

*Wang v. Hearst Corp.*,
  2012 WL 2864521 (S.D.N.Y. July 12, 2012) ........................................................ 22

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................................... 5, 6

*Weske v. Samsung Elecs., Am., Inc.,*
   42 F. Supp. 3d 599 (D.N.J. 2014)................................................................. 18

**STATUTES**

15 U.S.C. 45(a)(1)........................................................................................ 15, 16

15 U.S.C. § 2301(6)............................................................................................ 19

15 U.S.C. § 2302(c)............................................................................................ 10

15 U.S.C. § 2302(c)(1)....................................................................................... 13

15 U.S.C. § 2310(d)(3)......................................................................................... 6

15 U.S.C. § 2310(d)(3)(c)..................................................................................... 5

M.G.L. c.93A, § 2........................................................................................... 15, 16

M.G.L. c.93A, § 2(b)...................................................................................... 15, 16

**RULES**

Fed. R. Civ. P. 8(a)(3)........................................................................................ 21

Fed. R. Civ. P. 9(b)....................................................................................... 1, 18

Fed. R. Civ. P. 15............................................................................................... 25

Fed. R. Civ. P. 15(a)(2)..................................................................................... 25

**REGULATIONS**

16 C.F.R. § 700.10.............................................................................................. 10

16 C.F.R. § 700.10(c)..................................................................................... 7, 12

16 C.F.R. § 700.10I............................................................................................. 14

940 Mass. Code Regs. 3.16............................................................................... 16

**OTHER AUTHORITIES**

1 Health Care and Antitrust L. § 4:6 (2022) ..................................................... 4

*Harley-Davidson Motor Co. Grp., LLC,*
   FTC Docket No. C-4778 ................................................................................. 16

*Matter of Harley-Davidson Motor Co., Grp, LLC,*
   FTC Docket No. C-4778 (2022)............................................................................... 9, 10

*Matter of MWE Investments, LLC,*
   FTC Docket No. C-4774 (2022).................................................................................. 10

*Matter of Weber-Stephen Prod. LLC,*
   FTC Docket. No. C-4775 (2022)................................................................................ 8, 9

*MWE Invs, LLC, LLC,*
   FTC Docket No. C-4774 ............................................................................................. 16

Prosser and Keeton on Torts .......................................................................................... 20

Restatement (Second) of Torts (1976) ........................................................................... 20

*Weber-Stephen Prod. LLC,*
   FTC Docket No. C-4775 ............................................................................................. 16

## INTRODUCTION

In their Second Amended Complaint ("SAC") (ECF No. 31), Plaintiffs Abigail Shaughnessy, Aditya Pathak, and Katherine Alegre ("Plaintiffs") allege that they purchased espresso and coffee machines sold under the Nespresso Vertuo brand name (the "Products") online which were shipped to their homes in Massachusetts and New York. SAC ¶¶ 9, 11, 13. Unknown to them at the time of sale, the Products that Plaintiffs purchased included warranty provisions that included statements that conditioned the continued validity of the warranties on the use of only an authorized repair service and/or authorized replacement parts (a "tying arrangement" or "unlawful repair restriction"). *Id.* ¶ 1. These provisions violate state and federal law, and caused economic injuries to Plaintiffs because owning a product with an unlawful warranty – imposing tying arrangements that state or imply that a consumer must buy or use an item or service from a particular company to keep their warranty coverage – decreases the value of the Products that Plaintiffs purchased, constituting an economic injury. Because of Defendant's written warranty, Plaintiffs then purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices. *Id.* ¶¶ 2-6, 10, 12, 14.

In response to these straightforward allegations, Defendant makes several arguments in its motion to dismiss ("MTD") (ECF No. 33), all of which fail. For example, Defendant argues that Plaintiffs have not sufficiently alleged an injury. But it is well-established that an economic injury in the form of a price premium (which Plaintiffs clearly allege) constitutes an injury.

The rest of Defendant's arguments also miss the mark, as Plaintiffs have adequately pled their claims. For example, Defendant argues for the dismissal of Plaintiffs' fraud and fraudulent omission claims for failure to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b), but Plaintiffs' allegations do meet the Rule 9(b) pleading requirements. *See infra.* Defendant additionally argues for the dismissal of Plaintiffs' unjust enrichment claim

because (it argues) Plaintiffs have an adequate remedy at law.  But Plaintiffs plead unjust enrichment in the alternative, which is permitted in this District.

Finally, Defendant argues that the Court should strike Plaintiffs' class allegations.  But this argument is unripe and, per the practice of this District, should be properly addressed at the class certification stage and not in the context of a Rule 12 motion.

Nearly all of Defendant's arguments have already been addressed and rejected by a federal court in the District of Massachusetts.  *Schaer v. Newell Brands Inc. et al*, 3:22-cv-30004-MGM (D. Mass. Feb. 16, 2023) (Attached as Exhibit M to the Diamond Decl.) ("*Newell Brands*").  This court should do the same.

## ARGUMENT

## I.   PLAINTIFFS POSSESS STANDING UNDER ARTICLE III

Defendant first argues that Plaintiffs' claims fail for "lack of standing," as Defendant contends that Plaintiffs do not allege facts sufficient to establish an economic injury.  MTD at 6.  That is wrong.

It is well-established in New York that an economic injury in the form of a price premium (which Plaintiffs clearly allege) constitutes an injury sufficient to confer standing.  *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) ("[A]n allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing."); *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703–04 (2d Cir. 2020) ("As for Article III standing, Axon has suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury – paying a premium – as a result.").

Plaintiffs allege two forms of injury.  **First**, Plaintiffs allege that they "would not have purchased the Product, or [they] would have paid significantly less for the Product, had [they]

known that the Product did not comply with state and federal law."  SAC ¶¶ 9, 11, 13.  **Second**, Plaintiffs allege that "because of Defendant's written warranty, [they] purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices" and they "would have liked to use cheaper third-party coffee capsules, but [their] warranty, as written, implied that [they were] prohibited from doing so."  *Id.* ¶¶ 10, 12, 14.  Plaintiffs also included a table showing that Nespresso branded coffee capsules are approximately double the price of all competing third-party capsules.  *Id.* ¶ 2.  This is sufficient.

Defendant frames the first injury as involving a "a mere failure to comply with the law."  MTD at 6.  But this is incorrect.  Rather, Plaintiffs allege that Defendant's failure to comply with the law has *actually decreased* the value of the Products they had purchased.  SAC ¶¶ 9, 11, 13.  It is not only plausible, but common sense, that a coffee machine that permits a purchaser to use a much greater variety of third-party coffee pods is more valuable than a coffee machine that permits purchasers use a much smaller variety of first-party, pricier coffee pods.  *See Ross v. Citigroup, Inc.*, 630 F. App'x 79, 83 (2d Cir. 2015) (finding that a reduction in "consumer choice" satisfied Article III standing).  Plaintiffs clearly plead that there is an injury-in-fact because Defendant's policies clearly lessen the value of the Products, which in turn confers Article III standing.  SAC ¶¶ 1, 2-6, 9, 11, 13, 37, 39-43, 49.

Defendant next argues against Plaintiffs' second injury because "there are no such competing brands because these products are not actually compatible with the Machine" and thus, according to Defendant, Plaintiffs have "failed to allege that Plaintiffs could have or would have purchased cheaper capsules which are compatible."  MTD at 7.  But this makes no sense.  Plaintiffs alleged that the competing products that are approximately half the price of Defendant's first party coffee capsules, were "essentially identical."  SAC ¶¶ 2-3.  The fact that these competing brands of coffee capsules do not fit into the Product, and that Defendant's

warranty does not permit the coffee capsules to be included in the machines, **is** part of the Defendant's violation of the Magnuson-Moss Warranty Act ("MMWA").  *See e.g., Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 887 (10th Cir. 1997) ("[T]wo types of parties may have standing to challenge illegal tying arrangements – the purchasers who are forced to buy the tied product to obtain the tying product (the prototypical tying plaintiff), and the competitor who is restrained from entering the market for the tied product."); § 4:6 Tying Agreements, 1 Health Care and Antitrust L. § 4:6 (2022) ("Tying claims may be brought by the purchaser subjected to the tying arrangement who was forced to pay supracompetitive prices for the tied product.").[1]  Defendant is illogically attempting to use its violation of the MMWA to argue against Plaintiffs' injury.

Additionally, Plaintiffs have alleged that Defendant also manufactures "another coffee machine that is referred to as the Nespresso Original Line Espresso Machine."  SAC ¶ 7.  "This product accepts third party coffee capsules."  *Id.*  "Defendant sells first-party capsules that work with Original Line Espresso Machines (but do not work with Vertuo machines) for 75 cents per capsule (50 capsules for $37.50)."  *Id.*  However, Vertuo branded coffee capsules are sold by Defendant for 62.5% more.  *Id.* ¶¶ 2, 7.  These allegations add further plausibility that Defendant's policies associated with the Vertuo coffee machines force customers to pay a higher price for coffee capsules, even compared to other products sold by Defendant.

Finally, Defendant's argument has already been rejected in *Newell Brands*.  *See Newell*

---

[1] Contrary to Defendant's present argument that the third-party coffee capsules mentioned in the complaint are not comparable to the Vertuo branded capsules, it is notable that the only difference between Vertuo branded capsules and other third-party capsules is the "ornamental design" of the Vertuo capsules.  Diamond Decl., Ex. E.  In fact, Defendant's proprietary design is only protected by a design patent rather than a utility patent.  *Id.*; *Wine Enthusiast, Inc. v. Vinotemp Int'l Corp.*, 317 F. Supp. 3d 795, 800 (S.D.N.Y. 2018) ("Accordingly, a 'design patent, unlike a utility patent, limits protection to the ornamental design of the article.'") (*citing Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010)).

*Brands*, Diamond Decl. Ex. M at 2 ("The court also agrees with Plaintiff that a product that contains an unlawful warranty … is worth less than a product that does not contain such a restriction. This, is and of itself, would be an injury in fact. After all, a relatively small economic loss -- even an identifiable trifle -- is enough to confer standing.") (citations omitted). Additionally, on November 3, 2022, a Court in Arkansas found that the plaintiff had standing to prosecute the action in a similar matter. *See Leflar v. Makita U.S.A.*, Inc, Case No. 43CV-22-377 (Ark. Circ. Ct. Nov. 3, 2022), Diamond Decl., Ex. A-D.  In *Leflar*, like the instant case, the plaintiff sued the defendant for illegally conditioning "the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance." *Id.*, Ex. B ¶ 22.  The Court should come to the same conclusion here.

## II.   CAFA PROVIDES AN ALTERNATE BASIS FOR JURISDICTION OVER PLAINTIFFS' MMWA CLAIMS

Defendant next claims that Plaintiffs' MMWA claim does not meet the requirements for the court to exercise subject matter jurisdiction because: "Under the MMWA, 'no claim shall be cognizable' where 'the action is brought as a class action, and the number of named plaintiffs is less than one hundred.' 15 U.S.C. § 2310(d)(3)(c).  The SAC here includes only three named plaintiffs … [and the Class Action Fairness Act ('CAFA')] cannot be used to evade or override the plain language of the MMWA."  MTD at 7-8.  This is wrong.

The best-reasoned case on this issue is one from this District.  In *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015), the defendant attacked the court's subject-matter jurisdiction on the same grounds Defendant does here, contending that "Plaintiffs' MMWA claims must be dismissed because the Complaint neither names one hundred plaintiffs nor states that any individual plaintiff is seeking more than $25."  88 F. Supp. 3d at 293.  Judge Furman concluded that CAFA can provide an alternative basis for MMWA claims.  In his reasoning, Judge Furman noted that CAFA grants jurisdiction over "any" class action that meets the other

jurisdictional prerequisites, thus facially encompassing class actions based on the MMWA. *Id.* at 294. There are a few enumerated exceptions to CAFA, but MMWA claims are not among them. *Id.* "Accordingly, and given the plain language of CAFA, there is no basis to read an MMWA exception into CAFA that Congress itself chose not to include." *Id.* Furthermore, "interpreting CAFA to allow plaintiffs to bring class actions alleging violations of the MMWA, even when they cannot satisfy the MMWA's jurisdictional limits, furthers the purpose of CAFA without undermining the purposes of the MMWA's jurisdictional limitations." *Id.*

Based on this analysis and noting that its decision is consistent with the vast majority of courts deciding the question, Judge Furman held that "where, as here, the jurisdictional prerequisites of CAFA are satisfied, it may exercise subject-matter jurisdiction over a claim under the MMWA without regard for whether the jurisdictional prerequisites of that statute are also met." 88 F. Supp. 3d at 295. *See also Dayan v. Swiss-American Products, Inc.*, 2017 WL 9485702, at *9-10 (E.D.N.Y. Jan. 3, 2017) (noting that "most courts, including at least three Courts of Appeal, have held that, where its conditions are met, CAFA provides an alternative basis for jurisdiction without regard for the MMWA," and as such "[t]he Court finds the analysis that CAFA grants MMWA jurisdiction to be persuasive, and respectfully recommends that Plaintiff's MMWA claim not be dismissed because of his failure to meet [a requirement under § 2310(d)(3)]"); *Rossi v. Procter & Gamble Co.*, 2012 WL 12914668, at *2 (D.N.J. July 10, 2012) ("Since the MMWA contemplates alternative jurisdiction, and 'Congress intended for CAFA to expand federal court jurisdiction over class actions,' CAFA may provide an alternate basis of jurisdiction for MMWA claims.") (citing *McGee v. Cont'l Tire N. Am., Inc.*, 2007 WL 2462624, at *3 (D.N.J. Aug. 27, 2007)). The cases Defendant cites to the contrary represent the minority position and should not be followed.

**III.     PLAINTIFFS HAVE STATED A CLAIM UNDER THE MMWA**

**A.     Defendant Conditioned Its Limited Warranty Coverage On
Use Of Nespresso Brand Articles Or Services**

Defendant next argues that its warranty "does not state that the Limited Guarantee is
conditioned on the use of any Nespresso brand article or service" and that the limited warranty
does not refer "to any Nespresso brand articles or services."  MTD at 10 (emphasis in original).
Again, this is not correct.

First, Defendant's warranty expressly states that "[t]his appliance is designed for
Nespresso Vertuo coffee capsules available exclusively through the Nespresso Club or your
Nespresso authorized representative."  SAC ¶ 27.  Defendant's warranty further directs
consumers to "[o]nly use capsules intended for this appliance" and warns that "[t]his limited
guarantee does not apply to any defect resulting from … failure to follow the product
instructions … [or] authorized product modifications or repair."  *Id.* ¶¶ 28-29.  Thus, "[b]y
conditioning its warranty in this manner, Defendant has violated the tying prohibition in the
Magnuson-Moss Warranty Act, which prohibits companies from conditioning their warranties on
a consumer's use of any article or service (other than an article or service provided without
charge under the terms of the warranty) identified by brand, trade, or corporate name."  *Id.* ¶ 32.

Next, Defendant argues that its warranty "lawfully disclaims liability 'resulting from …
unauthorized product modification or repair'" so that "[t]he language of the Limited Guarantee
falls within the FTC guidance and is appropriate under the MMWA" because "the MMWA does
'not preclude a warrantor from expressly excluding liability for defects or damage *caused by*
unauthorized articles or reservice.'  16 C.F.R. § 700.10(c)[.]"  MTD at 11 (emphasis in original).
That too is incorrect.

Defendant's attempt to reframe what its warranty communicates to a reasonable
consumer is meritless given the purpose of the MMWA and prior FTC decisions on warranties

substantially similar to Defendant's.  In fact, the FTC has issued several compliance warnings clarifying the scope of the right to repair regarding warranties similar to Defendant's.  For instance, in 2018, the FTC issued a compliance warning to ASUSTek Computer Inc. ("Asus").  SAC Ex. 2, pg. 1-2.  There, the FTC was "particularly concerned about the following statements, included in Asus's written warranty: "[The warranty] applies to firmware issues but not to any other software issues or customer induced damages or circumstances such as but not limited to: (a) The Product has been tampered with, repaired and/or modified by non-authorized personnel; … (c) The warranty seals have been broken or altered" *Id.* at 2.  This same language appears almost identically in the Products' warranty here.  SAC ¶ 29.

Regardless of how Defendant attempts to reframe its warranty, the warranty nonetheless frustrates the purpose of the MMWA's bar on tying a warranty's validity to the exclusive use of authorized parts.  The FTC has explained that "the broad purposes of the Warranty Act are: (1) to improve the adequacy of warranty information available to consumers and thereby facilitate consumers choice; (2) to prevent deception; and (3) to improve competition in the marketing of consumer products."  *In the Matter of Weber-Stephen Prod. LLC*, FTC Docket. No. C-4775 (2022), Complaint ¶ 9 (Attached as Ex. F to the Diamond Decl.).  Defendant's warranty here is exactly the type which the MMWA seeks to prohibit.  It provides deceptive instructions to consumers, the effect of which is to remove them from the third-party market and limit their choice all together.

Nevertheless, a warranty provision invalidated *as a result of* the use of unauthorized products does not remove it from the scope of the MMWA's anti-tying provision.  In *Weber*, the FTC complained of Weber's written warranty which stated, *inter alia*, that "'[t]he use and/or installation of parts on your WEBER products that are not genuine WEBER parts will void this warranty, *and damages that result hereby are not covered by this warranty*."  *Id.* ¶ 6 (emphasis

added).  Ultimately, the FTC enjoined *Weber* from making any representations to consumers, "expressly or by implication," that "[a]s a condition of warranty coverage, or within the Written Warranty, that consumers must use only genuine or authorized parts."  *In the Matter of Weber-Stephen Prod. LLC*, FTC Docket. No. C-4775 (2022), Decision and Order at 4 (Attached as Ex. G to the Diamond Decl.).  In addition, the FTC ordered *Weber* to add "[c]learly and [c]onspicuously, in any warranty: 'Using third-party parts will not void this warranty.'"  *Id.*

In another case, Harley-Davidson motorcycles included a written warranty which "condition[ed] warranty coverage on the use of genuine Harley-Davidson parts and accessories." *In the Matter of Harley-Davidson Motor Co., Grp, LLC,* FTC Docket No. C-4778 (2022), Complaint ¶ 6 (Attached as Ex. H to the Diamond Decl.).  Specifically, the warranty stated: "[g]enuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle." *Id.* ¶ 7.  The warranty further directed consumers to "insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact."  *Id.*  The warranty further stated that the "'limited warranty will not apply to any motorcycle … Which has not been operated or maintained as specified in the owner's manual. … or has other unapproved modifications'" and specifically warned "that 'the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void this limited warranty.'"  *Id.* ¶¶ 8-9.

In that matter, the FTC ordered Harley-Davidson to comply with the MMWA by restraining it, in its written warranty which is substantially similar to Defendant's here, from making "expressly or by implication" any representations that "[a] warranty will or may be void due to a consumer using unauthorized or third-party parts" and from conditioning warranty coverage on using "only genuine Harley-Davidson parts or services provided by authorized

service providers." *In the Matter of Harley-Davidson Motor Co., Grp, LLC,* FTC Docket No. C-4778 (2022), Decision and Order at 4 (Attached as Ex. I to the Diamond Decl.).  The FTC further ordered Harley-Davidson to "[c]learly and [c]onspiculously" explain that "using third-party parts alone will not void" its written warranty.  *Id.* at 5.

Similarly, in *MWE Inv. LLC,* the FTC took issue with *MWE* conditioning "warranty coverage on the use of genuine MWE Investments parts and accessories."  *In the Matter of MWE Investments, LLC*, FTC Docket No. C-4774 (2022), Complaint ¶ 6, (Attached as Ex. J to the Diamond Decl.).  The FTC explained that "[a]mong other things, the Warranty Act prohibits a warrantor from conditioning a warranty for a consumer product … on the consumer's use of an article or a service (other than an article or a service provided without charge) which is identified by a brand, Commission (the 'Tying Prohibition')."  *Id.* ¶ 10 (citing 15 U.S.C. § 2302(c) and 16 C.F.R. §700.10).  Both matters considered warranties that are substantially similar to the warranty issued by Defendant.  In both matters, the FTC made it clear that expressly or implying that a warranty would be void as a result of introducing third-party parts is prohibited under the MMWA.

Again, here, Defendant's warranty clearly directs its users to "[o]nly use capsules intended for this appliance" and specifies that "[t]his appliance is designed for Nespresso Vertuo coffee capsules available exclusively through the Nespresso Club or your authorized representative."  SAC ¶¶ 27-28.  The warranty clearly states that "[t]his limited guarantee does not apply to any defect resulting from … failure to follow the product instructions … [or] authorized product modifications or repair."  *Id.* ¶¶ 28-29.  However, "there are no third-party coffee capsules which are compatible with the Products."  *Id.* ¶ 5.  So, "[i]n order to get third-party capsules to work with the Products, a user would need to modify the Products.  However, such modification is not permitted according to Defendant's warranty."  *Id.* ¶ 6.  In fact, unlike

Defendant's other coffee machines, Defendant prohibits other companies from selling third party coffee capsules that are compatible with the Products through a design patent.  Diamond Decl., Ex. E.  Thus, "Defendant clearly implies that the full advantage of the Product's Warranty is only available to users who purchase expensive first party Nespresso Vertuo Coffee Capsules." SAC ¶ 30.  It is clear that Defendant's warranty, regardless of Defendant's re-characterization of what it communicates to consumers, falls within the anti-tying provision of the MMWA.  Again, Defendant's warranty is of the kind that the MMWA is intended to prohibit.  Therefore, Plaintiffs have successfully stated a claim under the MMWA.

### B.     Defendant Implicitly Ties The Continuing Validity Of The Limited Warranty On The Purchase Of Defendant's First Party Overpriced Coffee Pods

Defendant argues that the statements at issue in Defendant's warranty do not create an implied condition to purchase Defendant's first party coffee capsules.  Rather, Defendant states, the statements are simply "safety warnings on the improper use of capsules."  MTD at 12-13. But this is incorrect.

Defendant's warranty states that the Product "is designed for Nespresso Vertuo coffee capsules available exclusively through the Nespresso Club or your Nespresso authorized representative."  SAC ¶ 27.  Defendant's warranty instructs purchasers to "[o]nly use capsules intended for this appliance," and "[t]his machine operates with Nespresso Vertuo capsules."  *Id.* ¶ 28.  Defendant's warranty also states, "[t]his limited guarantee does not apply to any defect resulting from … failure to follow the product instructions … [or] unauthorized product modification or repair."  *Id.* ¶ 29.

The anti-tying provision of the MMWA is much broader than Defendant suggests.  As Defendant is well aware, in 2015, the FTC amended its official interpretation of the MMWA "to clarify that implied tying – warranty language that implies to a consumer that warranty coverage

is conditioned on the use of select parts or service – is deceptive."   Specifically, the FTC added language stating:

> Warranty language that implies to a consumer acting reasonably in the circumstances that warranty coverage requires the consumer's purchase of an article or service identified by brand, trade or corporate name is similarly deceptive.  For example, a provision in the warranty such as, "use only an authorized 'ABC' dealer" or "use only 'ABC' replacement parts," is prohibited where the service or parts are not provided free of charge pursuant to the warranty.

16 C.F.R. § 700.10(c).

Applying this provision, the FTC considers it violative of the MMWA to state that a limited warranty would not apply "if the warranty seal has been broken, removed, erased, defaced, altered, or is otherwise illegible, where a device cannot be repaired without such effects."   Diamond Decl., Ex. L.  Nespresso's warranty is violative of this provision because a reasonable person reading Defendant's warranty would believe that the only way to get the Product to accept a third-party coffee capsule would be to modify the Product, which would void the Product's warranty.  SAC ¶¶ 26-30.  Thus, Defendant implies that, to take full advantage of the Product's warranty, Plaintiffs and class members must purchase an article which is identified by brand, trade, or corporate name (here the "Nespresso Vertuo capsule").  *Id.*

Defendant attempts to argue that it is possible to read these passages as simply legally important warnings.  MTD at 12.  But this argument is wrong.  Any one of the challenged statements would be violative of the MMWA according to the FTC, but it is even clearer that when the passages are taken together, a consumer acting reasonably under the circumstances would understand that her warranty would not apply to a Product that she modified in order to accept third-party coffee capsules.   Additionally, multiple courts have found that the reasonable consumer test is not ripe for a motion to dismiss.  *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *13 (E.D.N.Y. Aug. 29, 2013) ("The Court [concludes] that what a

reasonable consumer would believe raises a factual dispute that cannot properly be resolved on a motion to dismiss."); *Cooper v. Anheuser-Busch, LLC*, 2021 WL 3501203, at *6 (S.D.N.Y. Aug. 9, 2021) ("Here, the Court cannot conclude, as a matter of law, that the Products' labeling 'would not be misleading to a reasonable consumer.' … Plaintiffs have cogently explained how reasonable consumers might be misled.…  Such a mistake is not hard to imagine.") (citation omitted).

Finally, Defendant's characterization that the statements are merely innocent, safety related statements is undercut by Defendant's failure to obtain a waiver from the Federal Trade Commission which requires warrantors who desire an exemption from the MMWA's anti-tying provision to satisfy the FTC "that the warranted product will function properly only if the article or service so identified is used in connection with the warranted product."  15 U.S.C. § 2302(c)(1).  Here, no exemption was granted by the FTC.

## C.   Defendant's Violations Of The MMWA Have Injured Plaintiffs

Defendant argues that "Plaintiffs have failed to allege such actual damages" and that "[m]erely paying for a product with a defective warranty under the MMWA does not give rise to the requisite damage."  MTD at 16.  This too is not so.  As discussed, *supra*, Plaintiffs allege two forms of injury.

Defendant largely bases its argument on *McGarvey v. Penske Auto. Grp., Inc.*, 2011 WL 1325210, at *7 (D.N.J. Mar. 31, 2011).  *See* MTD at 16.  However, the facts at issue here are distinguishable from *McGarvey* because here, Plaintiffs allege an injury.  In *McGarvey*, a warranty for an anti-theft device for automobiles was alleged to violate the MMWA anti-tying provision.  *McGarvey* at *7.  The *McGarvey* plaintiffs only sought to "void warranties prohibited by the anti-tying provision" and as such only challenged the legality of the warranty rather than claim any additional injury.  *Id.* at *8.

13

Here however, Plaintiffs allege that they "would not have purchased the Product, or [they] would have paid significantly less for the Product, had [they] known that the Product did not comply with state and federal law." SAC ¶¶ 9, 11, 13. Plaintiffs also allege that "because of Defendant's written warranty, [they] purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices" and they "would have liked to use cheaper third-party coffee capsules, but [their] warranty, as written, implied that [they were] prohibited from doing so." *Id.* ¶¶ 10, 12, 14. Plaintiffs also included a table showing that Nespresso branded coffee capsules are approximately double the price of all competing third party capsules. *Id.* ¶ 2. These are both cognizable injuries under MMWA. *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015) (allowing recovery under the MMWA for economic damages).

## IV. PLAINTIFFS HAVE STATED A CLAIM UNDER STATE CONSUMER PROTECTION STATUTES

Defendant argues that Plaintiffs failed "to allege any deceptive conduct under the reasonable consumer standard for either the MUDBPA or NYGBL" because "both statutes include 'safe harbor' provisions for conduct consistent with the FTC guidance." MTD at 16-17. Not so. Plaintiffs have alleged that their state law claims are premised on violations of federal law and FTC guidance, which Defendant violated.

### A.    Plaintiffs Have Adequately Pled Violative Conduct

First, as described above, the FTC has recently clarified that the disclaimer of liability does not need to be explicit. "Warranty language that implies to a consumer acting reasonably in the circumstances that warranty coverage requires the consumer's purchase of an article or service identified by brand, trade or corporate name is similarly deceptive." 16 C.F.R. § 700.10I. For reasons described above, Defendant does not comply which this provision of FTC regulations because a consumer acting reasonably in the circumstances would read Defendant's

warranty as requiring him or her to purchase Defendant's more expensive first party capsules. SAC ¶¶ 1-6, 26-32.

Plaintiffs allege that Defendant failed to inform Plaintiffs and the class that this implied condition was unlawful, despite Defendant having knowledge of the relevant FTC regulations. SAC ¶¶ 9-14, 89, 95; *Gomez-Jimenez v. New York L. Sch.*, 956 N.Y.S.2d 54, 58 (App. Div. 2012) ("Omission-based claims under Section 349 are appropriate 'where the business alone possesses material information that is relevant to the consumer and fails to provide this information.'") (citing *Bildstein v. MasterCard Int'l, Inc.*, 2005 WL 1324972, *4 (S.D.N.Y. 2005)). "Had Plaintiff – or reasonable class members – been aware of the unlawful repair restriction, they would not have purchased the Product, or would have paid significantly less for it." SAC ¶ 1.  This allegation is sufficient to support the unfair practice claim.  *See Chiarelli v. Nissan N. Am., Inc.*, 2015 WL 5686507, at *11 (E.D.N.Y. Sept. 25, 2015) ("Plaintiff has adequately alleged an omissions-based theory.  In brief, Plaintiff allege that Nissan failed to disclose information about the latent defect in the Timing Chain Tensioning System, which only Nissan had in its possession and that was relevant to consumers, including Plaintiff.").

Specifically with regards to Plaintiff Shaughnessy's and Plaintiff Pathak's claims under 93A, Defendant has committed a *per se* violation of that statute.  Chapter 93A states that "in construing [what constitutes unfair or deceptive acts or practices in actions brought under 93A] the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1))." M.G.L. c.93A, § 2(b).  Indeed, the Massachusetts Attorney General has promulgated rules stating that "an act or practice is a violation of M.G.L. c.93A, § 2 if … [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to

provide the consumers of this Commonwealth protection."  940 Mass. Code Regs. 3.16.  In

constituting these passages, the First Circuit has found that a violation of the FTC Act that causes

injury to a plaintiff consumer is a per se violation of Chapter 93A.  *McDermott v. Marcus,*

*Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 123 (1st Cir. 2014) ("And because Massachusetts

has 'wholly incorporated' the FTC Act and its interpretation into state consumer protection law,

a violation of the FDCPA not only per se violates the FTC Act, it also constitutes a per se

Chapter 93A violation."); 15 U.S.C.A. § 2310(b) (stating a violation of the MMWA is a violation

of the FTC Act, 15 U.S.C. § 45(a)(1), which prohibits "unfair or deceptive acts or practices in or

affecting commerce."); *see also Newell Brands*, Diamond Decl., Ex. M at 3 ("For these same

reasons [that Plaintiff stated a claim under the MMWA], the court concludes Plaintiff has

adequately alleged a violation of Chapter 93A") (citing 15 U.S.C.A. § 2310(b)).

Here the FTC has already completed several formal adjudications finding that conduct

similar to what is at issue here, violates both the MMWA and Section 5 of the FTC Act.  *See*

Decision and Order, *In the matter of Weber-Stephen Prod. LLC*, FTC Docket No. C-4775;

Decision and Order, *In the matter of Harley-Davidson Motor Co. Grp., LLC*, FTC Docket No. C-

4778; Decision and Order, *In the matter of MWE Invs, LLC, LLC*, FTC Docket No. C-4774; *See*

*also* SAC, Exs, 1-6.  Defendant's conduct thus constitutes a per se violation of Ch. 93A.

### B.    Plaintiffs Have Pled Injury Under State Consumer Protection Statutes

Defendant repetitively argues that "[t]he SAC again fails to allege facts plausibly

showing that Plaintiffs have experienced any actual injury under these statutes."  MTD at 18.

This is not so.  For the same reasons that Plaintiffs satisfy Article III standing, they have properly

pled injury under 93A and NYGBL.  *See* Section I.

Defendant relies on *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999) for the

proposition that Plaintiffs have not alleged a lost "benefit-of-the-bargain theory" of injury.  But

numerous courts in this District have distinguished *Small*.  For instance, Judge Rakoff previously held:

> Defendant's reliance on *Small* … is misplaced.  In *Small*, plaintiffs brought suit under Section 349 against cigarette manufacturers, arguing that they would not have purchased the cigarettes had they known they were addictive.  However, the plaintiffs in *Small* failed to allege that the cost of cigarettes was affected by the alleged misrepresentation, and therefore pled no injury beyond the deception itself.  Here, plaintiffs argue that the product was rendered "worthless" because of its inherent danger.

*In re Amla Litig.*, 282 F. Supp. 3d 751, 768 (S.D.N.Y. 2017); *see also Fishon v. Peloton Interactive, Inc.*, 2020 WL 6564755, at *11 (S.D.N.Y. Nov. 9, 2020) (Liman, J.) ("*Small* does not stand for the broad proposition that it is legally insufficient for a plaintiff in federal court to plead that it would not have purchased the subject product had it known that defendant's claims were misrepresentations .…  Unlike in *Small*, in this case, Plaintiffs do allege that they were injured by the misrepresentation – they had access to a smaller number of classes than they reasonably believed they would have access to at the time of purchase.").  In short, the holding in *Small* is confined to a situation where a consumer's injury does not stem from a company's deceptive conduct.  By contrast, Plaintiffs here allege the Products were worth less *because of* illegal tying arrangement.  SAC ¶ 1.  Additionally, Defendant's conduct also caused Plaintiffs to purchase Defendant's Vertuo branded Coffee Capsules at approximately double the price of comparable third-party coffee capsules.  *Id.* ¶¶ 2-6, 9-14.  Therefore, "there is a connection between the misrepresentation and [] harm from, or failure of, the product."  *Fishon*, 2020 WL 6564755, at *11 (internal quotation marks and citations omitted).

## V.     PLAINTIFFS' ALLEGATIONS OF FALSE REPRESENTATIONS MEET THE PARTICULARITY REQUIREMENTS UNDER RULE 9(B)

In its attack on the causes of action for fraud and fraudulent omission, Defendant argues that Plaintiffs fail to plead sufficient facts to establish a cause of action for fraud.  MTD at 20-22. Defendant is wrong.

### A.     Plaintiffs' Cause of Action For Fraud Meets The Requirements Of Rule 9(B)

Defendant argues that "[t]he SAC fails to otherwise state any facts that would sufficiently allege common law fraud … relying only on bare allegations of the relevant elements."  MTD at 21.  This too is a mischaracterization of the pleading standard at this stage.

"Rule 9(b) essentially requires Plaintiff to allege the who, what, when, where, and how elements to state a claim arising in fraud."  *Weske v. Samsung Elecs., Am., Inc.,* 42 F. Supp. 3d 599, 607 (D.N.J. 2014).

Moreover, "[a]lthough 'the fraud alleged must be stated with particularity … the requisite intent of the alleged [perpetrator] of fraud need not be alleged with great specificity.'"  *Dennis v. JPMorgan Chase & Co.,* 343 F. Supp. 3d 122, 161 (S.D.N.Y. 2018) (citing *Amusement Indus., Inc. v. Stern,* 693 F. Supp. 2d 327, 338 (S.D.N.Y. 2010)).  "Nonetheless, the complaint 'must allege facts that give rise to a strong inference of fraudulent intent,' which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Id.*  (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2nd Cir. 2006)).  This standard has been met here.  Plaintiffs have identified "the who, what, where, when, and how of the alleged fraud."  *Rickerson v. Pinnacle Foods Inc.,* 2017 WL 6034147, at *5 (D.N.J. Dec. 6, 2017):

**Who:**          "Defendant distributes consumer products to retailers throughout the United States, who then sell the appliances to consumers… Defendant's products include

espresso and coffee machines sold under the 'Nespresso Vertuo' brand name." SAC ¶¶ 19-20.

**What:**          "Defendant indicated to Plaintiffs and members of the Classes that they would be unable to repair or use parts not authorized by Defendant on the products that they had just purchased.  Defendant knowingly added this provision in order to encourage Plaintiffs and members of the Classes to purchase new Products and/or Nespresso Vertuo branded Coffee Capsules at inflated prices rather than purchase third-party coffee capsules."  *Id.* ¶ 87.  "Because of Defendant's written warranty" Plaintiffs "purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices."  Plaintiffs "would have liked to use cheaper third-party coffee capsules, but [their] warranty, as written, implied that [they were] prohibited from doing so."  *Id.* ¶¶ 9-14.

**Where:**          "Defendant's Products include a 'written warranty' as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty."  *Id.* at ¶ 23; *see also id.* ¶¶ 26-31; 70-73 (detailing the misrepresentations in the warranty).

**When:**          "In or about July 2020, Ms. Shaughnessy purchased one Nespresso Vertuo Next Premium Coffee Machine for $121.54 from the Bed Bath & Beyond website."  *Id.* ¶ 9.  "In December 2021, Mr. Pathak purchased two Nespresso Vertuo Next Coffee Machines for $191.24 each from the Costco website."  *Id.* ¶ 11.  "On November 22, 2021, Ms. Alegre purchased one Nespresso Vertuo Next Premium Coffee Machine for $188.34 from the Macy's website."  *Id.* ¶ 13.

**How:**          "[Plaintiffs] purchased the Product, reasonably believing its warranty complied with state and federal law.  However, the Product [Plaintiffs] purchased did not comply with state and federal law because of the unlawful tying arrangement attached to the warranty stated and/or implied that [Plaintiffs] would need to purchase Nespresso Vertuo branded Coffee Capsules from Nespresso to keep [their] warranty coverage.  [Plaintiffs] would not have purchased the Product, or would have paid significantly less for the Product, had [they] known that the Product did not comply with state and federal law."  *Id.* ¶¶ 9, 11, 13.  "Because of Defendant's written warranty, [Plaintiffs] purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices.  [Plaintiffs] would have liked to use cheaper third-party coffee capsules, but [their] warranty, as written, implied that [they were] prohibited from doing so."  *Id.* ¶¶ 10, 12, 14.

## B.    Plaintiffs Have Stated a Claim For Fraudulent Omission

Next, Defendant argues that "Plaintiffs' SAC fails to allege a knowing and intentional … omission of a material fact."  MTD at 21.  That is wrong.

Here, Plaintiffs' claims for fraudulent omission are "based on fraudulent omissions concerning the unlawfulness of the tying arrangements that are included in Defendant's

warranties." SAC ¶ 94. Plaintiffs' claim is successfully alleged because "Defendant failed to disclose that the Products' tying arrangements were unlawful and unenforceable" (*id.*), even though "Defendant manufactures, markets, and sells consumer products nationwide and knowns that the FTC has stated that tying arrangements of the type that appears on Defendant's warranty are unlawful." *Id.* ¶ 95. Nonetheless, Defendant continued to include its unlawful tying arrangements on its products." *Id.* The fact that a consumer could possibly have discovered that Defendant's implied warranty terms were legally unenforceable after conducting an investigation does not affect Plaintiffs' claims for fraudulent omission. *See, e.g.*, *Sanford Inst. for Sav. v. Gallo*, 156 F.3d 71, 74 (1st Cir. 1998) ("A party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation."); *Gordon & Co. v. Ross*, 84 F.3d 542, 546 (2d Cir. 1996) ("The proper test of reliance in a fraud case is not 'reasonable' reliance, it is 'justifiable' reliance, a clearly less burdensome test.") (*citing Field v. Mans*, 516 U.S. 59, 74 (1995)); *see also* Restatement (Second) of Torts §§ 540, 541 cmt. a (1976); Prosser and Keeton on Torts § 108, at 753; *see also Newell Brands*, Diamond Decl., Ex. M at 4 ("The court agrees with Plaintiff, however, that the existence of the warranty somewhere online does not defeat this claim, as Plaintiff has alleged that she 'relied on the packaging,' which disclosed 'that the Product included a one-year limited warranty but did not disclose that the warranty included an unlawful repair restriction…. At this early stage in the litigation, and viewing all facts and reasonable inferences in Plaintiff's favor, the court concludes Plaintiff has state a claim for fraudulent omission.'").

## VI.   PLAINTIFFS HAVE PLED A CLAIM FOR UNJUST ENRICHMENT IN THE ALTERNATIVE

Defendant argues that Plaintiffs' unjust enrichment claim fails because "Massachusetts and New York law both preclude an unjust enrichment claim when there is an adequate remedy at law." MTD at 22-23. However, this argument is incorrect and misplaced.

20

Federal Rule of Civil Procedure 8(a)(3) provides that "a demand for relief … may include relief in the alternative or different types of relief."  New York law permits plaintiffs to plead unjust enrichment in the alternative to other theories at the pleading stage.  *See Axon v. Florida's Natural Growers, Inc.,* 813 F. App'x 701, 706 (2nd Cir. 2020) ("[A] plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim."); *Ford v. Rensselaer Polytechnic Institute,* 507 F. Supp. 3d 406, 419 (N.D.N.Y. 2020) ("If defendant successfully proves that there is no valid, enforceable contractual provision that affords plaintiff relief, then their unjust enrichment claim would be viable regardless of their erstwhile breach of contract claims.").

Thus, Plaintiffs may maintain an unjust enrichment claim at this stage of the proceedings, until the Court "will be in a better position once the record is more developed to determine whether the unjust enrichment claim should survive."  *Lass v. Bank of Am., N.A.,* 695 F.3d 129, 141 (1st Cir. 2012).

## VII.   PLAINTIFFS' CLASS ALLEGATIONS SHOULD NOT BE STRICKEN

Defendant next argues that "the court should strike the class allegations".  MTD at 24. However, Defendant's request is premature at this stage.  Tellingly, Defendant only cites out-of-Circuit case law on this point.

 "Motions to strike are generally disfavored[] and should be granted only when there is a strong reason for doing so."  *In re Tronox Sec. Litig.,* 2010 WL 2835545 at *4 (S.D.N.Y. June 28, 2010).  "A motion to strike class allegations … is even more disfavored" because a court must preemptively terminate class aspects "before plaintiffs are permitted to complete [] discovery … on questions relevant to class certification."  *Chenensky v. N.Y. Life Ins. Co.,* 2011 WL 1795305 at *1 (S.D.N.Y. 2015); *see also Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 515 (S.D.N.Y. 2015) ("[G]iven the hesitancy of courts in the Second Circuit to strike class allegations before a class certification motion is filed, the Court will therefore not strike

Plaintiff's class allegations"); *Wang v. Hearst Corp.*, 2012 WL 2864521 at *3 (S.D.N.Y. July 12, 2012) ("[A] motion to strike class allegations … is … disfavored because it requires a reviewing court to preemptively terminate the class aspects of … litigation … before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.").  Therefore, a motion to strike "should generally be dismissed as procedurally premature" if it argues issues "indistinguishable from the issues that would be decided in … a motion for class certification."  *Maddison v. Comfort Sys. USA (Syracuse), Inc.*, 2018 WL 679477 at *7 (N.D.N.Y. Feb. 1, 2018); *see also Shaw v. Hornblower Cruises & Events, LLC*, 2022 WL 16748584 at *5 (S.D.N.Y. Nov. 7, 2022) ("Courts have explained that 'a determination whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination.'") (quoting *Bernstein v. Cengage Learning Inc.*, No. 19 Civ. 7541, 2020 WL 5819862 at *6 (S.D.N.Y. Sept. 29, 2020).

The claims in this case concern Defendant's warranty provisions that prohibit the use of unauthorized parts.  SAC ¶¶ 1, 26-31.  Plaintiffs are seeking to include products that include the same provisions.  *Id.* ¶¶ 53-55.  The Products are closely related because the identical warranty provisions apply to all of the products at issue.  The Warranties are also all created by Defendant. *Id.* ¶¶ 1, 26.  As such, even at the appropriate class certification stage, it is difficult to see any significant individualized inquiries that could arise in this action.

Additionally, Plaintiffs can narrow or add detail to the class definition based on information learned in discovery.  *See Ortiz v. Sig Sauer, Inc.*, 448 F. Supp. 3d 89, 99 (D.N.H. 2020) ("At the present, the class definition set forth in the amended complaint is a proposal – and not by any means a certainty.  To the extent there are particular defects, they can be addressed on a motion to certify, when the court has the discretion to redefine or limit the class if necessary.").

Defendant next argues that "Plaintiffs' nationwide Common Law class allegations should be stricken because they require application of inconsistent and potentially conflicting laws of all 50 states." MTD at 25. But this argument too is premature.

Contrary to Defendant's assertions, Courts in this district regularly certify nationwide classes based on the same common law claims that Plaintiffs have brought here. *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 570 (S.D.N.Y. 2014) (certifying nationwide class for fraud). Additionally, at this stage of the proceedings, it is unclear if any of the vague variations in state law that Defendant alludes to will have any bearing on the case. *See, e.g., Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y.1993) (finding "application of the laws of different states, if necessary, does not preclude class action litigation"); *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. at 249-50 (D.N.J. June 30, 2008) (applying forum law because defendant did not "point out or establish any difference in the laws of the various jurisdictions").

Defendant finally argues that "nationwide and statewide class allegations should also be stricken because they are subject to highly individualized inquiries on injury (standing), reliance, and damage." MTD at 29. That too is premature at this stage.

"Courts should hesitate before concluding that those requirements [of Rule 23] cannot be met when such a conclusion is 'based on assumptions of fact rather than on findings of fact' and 'it remains unknown what class [the plaintiff will seek] to certify.'" *Hobbs v. Knight-Swift Transp. Holdings, Inc.,* 2022 WL 118256 at *4 (S.D.N.Y. Jan. 12, 2022) (quoting *Parker v. Time Warner Ent. Co., L.P.,* 331 F.3d 13, 21 (2nd Cir. 2003). Again, a motion to strike "should generally be dismissed as procedurally premature" if it argues issues "indistinguishable from the issues that would be decided in … a motion for class certification." *Maddison*, 2018 WL 679477 at *7.

Nonetheless, Plaintiffs' claims are not subject to highly individualized assessments because "all class members necessarily had to rely on the uniform misrepresentations when purchasing the product."  *Hart v. BHH, LLC*, 2017 WL 2912519 at *8 (S.D.N.Y. July 7, 2017).

Here, "Defendant's products include espresso and coffee machines sold under the 'Nespresso Vertuo' brand name."  SAC ¶ 20.  "All the relevant Products include the same unlawful repair restrictions in their warranties."  *Id.* ¶ 21.  "Defendant [] advertised, marketed, offered for sale, sold, and distributed [the] products through authorized dealers to consumers." *Id.*  "Plaintiffs seek to represent a class defined as all purchasers of Nespresso Vertuo branded products in the United States with warranty provisions that prohibit self-repair and/or the use of unauthorized parts."  *Id.* ¶ 53.  And, uniformly, "Plaintiffs and the Class and Subclass Members were also injury as a direct and proximate result of Defendant's breach because Defendant's breach caused Plaintiffs and members of the Classes to purchase Nespresso Vertuo branded coffee capsules at inflated prices, rather than cheaper third-party coffee capsules."  *Id.* ¶ 78. These allegations would be sufficient even at class certification.  *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) ("Classwide evidence will be used to establish whether Scotts's labeling of EZ Seed was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances."); *id.* ("[C]lasswide evidence will determine whether plaintiffs were injured."); *In re Dial Complete Mktg. and Sales Pracs. Litig.*, 312 F.R.D. 36, 61 (D.N.H. 2015) ("[T]he challenged claims were printed on the label of each and every Dial Complete bottle sold ….  [T]he court finds that the evidence in the record is sufficient to support a finding that the challenged claims were material, and that individualized evidence is therefore not required."); *see also Newell Brands*, Diamond Decl., Ex. M at 2 ("The court concludes, at this stage, that Plaintiff's claims and the claims of the class members, which are all based on allegedly unlawful warranty restrictions, are similar enough such that Plaintiff

has a sufficient personal stake in the adjudication of the class members' claims for standing

purposes.'").

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.[2]  To the extent the

Court grants any aspect of Defendant's Motion, Plaintiffs should be permitted leave to amend.

Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.");

*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) ("Thus, absent

evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice

to the opposing party, or futility, Rule 15's mandate must be obeyed.").



Dated: February 15, 2023                    Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By: */s/ Julian C. Diamond*
                                                  Julian C. Diamond

                                            Julian C. Diamond
                                            888 Seventh Avenue
                                            New York, NY 10019
                                            Telephone: (646) 837-7150
                                            Facsimile:  (212) 989-9163
                                            Email: jdiamond@bursor.com

                                            **BURSOR & FISHER, P.A.**
                                            Neal Deckant
                                            1990 North California Blvd., Suite 940
                                            Walnut Creek, CA 94596
                                            Telephone: (925) 300-4455
                                            Facsimile: (925) 407-2700
                                            Email:   ndeckant@bursor.com

                                            *Attorneys for Plaintiffs*

---

[2] Plaintiffs do not oppose dismissal of Count V seeking a declaratory judgment.