UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
ABIGAIL SHAUGHNESSY, ADITYA
PATHAK, AND KATHERINE ALEGRE,
individually and on behalf of
all other similarly situated,

              Plaintiffs,

      - against –

NESPRESSO USA, INC.,

              Defendant.

------------------------------X

**MEMORANDUM AND ORDER**

22 Civ. 6815 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      Three consumers, Abigail Shaughnessy, Aditya Pathak, and Katherine Alegre (collectively "plaintiffs" or "named plaintiffs"), purchased the Nespresso Vertuo Coffee Maker, which included a one-year limited warranty.  During the course of that year, plaintiffs' coffee makers did not malfunction in any way, nor did plaintiffs attempt to use the warranty.  Nevertheless, plaintiffs have filed the present suit seeking a nationwide class action, because, they claim, the warranty on the coffee maker was unlawful under the Magnuson-Moss Warranty Act ("MMWA"), which prohibits the tying of products or services to a warranty.  According to plaintiffs, the warranty was improperly conditioned on the use of Nespresso Vertuo Coffee Capsules -- the only capsules

on the market that are compatible with the coffee maker.  <u>See</u>
Second Amended Complaint ("SAC"), ECF No. 31.

Nespresso USA, Inc. ("Nespresso" or "defendant"), the maker
of the Nespresso Vertuo Next Machine, has now moved to dismiss the
Second Amended Complaint arguing that plaintiffs lack standing,
have failed to comply with the jurisdictional requirements of the
MMWA, and have failed to state a claim for each of the seven causes
of action.  In the alternative, defendant moves to strike the class
allegations.  <u>See</u> Def. Mem. of Law in Support of Mot. to Dismiss
("Def. Br."), ECF No. 33.

For the reasons outlined below, the Court agrees that
plaintiffs lack standing, and the case is dismissed without
prejudice.

**BACKGROUND**

**I.  Factual Background**[1]

The three named plaintiffs, Abigail Shaughnessy, Aditya
Pathak, and Katherine Alegre, each purchased the Nespresso Vertuo
Next Premium Coffee Machine (the "Vertuo Next Machine" or
"Machine") in July 2020, December 2021, and November 2021,

---

[1] Unless otherwise noted, the facts considered and recited here for purposes of
the instant motion to dismiss are drawn from plaintiffs' Second Amended
Complaint and are accepted as true, taking all reasonable inferences in
plaintiffs' favor.  <u>See</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191
(2d Cir. 2007); <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir.
1995).

respectively.[2]   SAC ¶¶ 9, 11, 13.   The Machine is a coffee maker
that, according to Nespresso, uses "unique Centrifusion®
technology," in which specific "extracting parameters ha[ve] been
carefully defined by [Nespresso's] coffee experts to ensure that
all aromas from each capsule can be extracted."[3]   Declaration of
Adam Lurie, Ex. A at 4, ECF No. 34-1 ("Nespresso Vertuo Next
Manual" or "Manual").   While prior Nespresso coffee machines used
the original Nespresso or third-party capsules, the Vertuo Next
Machine is only compatible with the Vertuo-branded coffee capsules
(the "Capsules" or "Nespresso Vertuo Capsules"), which plaintiffs
allege are approximately double the price of incompatible third-
party capsules.   SAC ¶¶ 2-7.   This means that if a consumer wanted
to use cheaper, but incompatible, capsules, he would need to modify

---

[2]  Shaughnessy and Pathak are Massachusetts residents and represent the
Massachusetts subclass, SAC ¶¶ 9, 11, while Alegre is a New York resident who
represents the New York subclass, id. ¶ 13.

[3] Despite basing its complaint on the statements in the Nespresso Vertuo Next
manual, plaintiffs curiously failed to include the manual as an attachment to
their complaint.   Instead, they reference the URL for the manual within the
Second Amended Complaint.   SAC ¶¶ 9, 11, 13. Defendant, however, included the
manual as an attachment to the Declaration of Adam Lurie filed with its motion.
See ECF No. 34-1.   A court may take into account any written instrument attached
to a complaint, as well as statements and documents "incorporated in [the
complaint] by reference" without converting a motion to dismiss into a motion
for summary judgment.   Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d
Cir. 2002).   "Even where a document is not incorporated by reference, the court
may nevertheless consider it where the complaint 'relies heavily upon its terms
and effect,' which renders the document 'integral' to the complaint."   Id. at
153 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69,
72 (2d Cir 1995) (per curium)).   Because the manual is incorporated by reference
or is otherwise integral to the complaint, the Court will consider the manual
at this stage.

the Machine.  <u>Id.</u> ¶ 6.  As a result, all three plaintiffs allege
that they purchased the Nespresso Vertuo Capsules.  <u>Id.</u> ¶¶ 10, 12,
14.

At the center of this dispute, plaintiffs allege that the
Machine contained an unlawful warranty that was conditioned on the
use of these Nespresso Vertuo Capsules and Nespresso repair
services.  The warranty, called a "Limited Guarantee," was included
in the Manual and was publicly available on Nespresso's website
prior to purchase.  <u>Id.</u> ¶¶ 9, 11, 13.  The Limited Guarantee
stated:

> Nespresso guarantees this product against defects in
> materials and workmanship for a period of one year. . . .
> During the guaranty period, Nespresso will either repair
> or replace, at its discretion, any defective product at
> no charge to the owner. . . . This limited guarantee
> does not apply to <u>any defect resulting from</u> negligence,
> accident, misuse, or any other reason beyond Nespresso's
> reasonable control, including but not limited to: . . .
> failure to follow product instructions . . . [or]
> unauthorized product modification or repair.

Vertuo Next Manual at 33 (emphasis added).

In addition to the limited guarantee, the Second Amended
Complaint also cites to language included in the instructions on
how to use the machine (<u>i.e.</u>, "This machine operates with Nespresso
Vertuo Capsules", SAC ¶ 71, Manual at 19), and to language in the
"Safeguards" sections describing potential safety hazards.

-4-

Specifically among the safety warnings, the manual stated: "Only use capsules intended for this appliance," SAC ¶ 71, Manual at 5; "This appliance is designed for Nespresso Vertuo coffee capsules available exclusively through the Nespresso Club or your Nespresso authorized representative," SAC ¶ 70, Manual at 7; and "Any servicing other than cleaning and user maintenance should be performed by an authorized service representative," SAC ¶ 75, Manual at 8.

According to plaintiffs, this language "conditions warranty coverage on the usage and purchase of Defendant's own Nespresso Vertuo Coffee Capsules, rather than allowing consumers to purchase cheaper third-party coffee capsules," SAC ¶ 26, and prevents consumers from modifying their machines to accommodate cheaper capsules that are not compatible with the Machine, id. ¶ 6.

At no point in the Second Amended Complaint do plaintiffs assert that their Machines malfunctioned or that they were denied coverage under the warranty. Moreover, there are no allegations that they planned to use the warranty in the future or planned to modify the machine in any way that would void the warranty. Instead, all three named plaintiffs merely state that, had they known about the allegedly unlawful warranty, they "would not have purchased the Product, or [] would have paid significantly less

for the product."   SAC ¶¶ 9, 11, 13.   Additionally, plaintiffs allege that they "purchased several Nespresso Vertuo branded Coffee Capsules at inflated prices" but would "have liked to use cheaper third-party capsules" that were implicitly prohibited by the warranty.   Id. ¶¶ 10, 12, 14.   As discussed earlier, any cheaper third-party capsules were not compatible with the Machine and would have required some form of modification to the Machine itself in order to be operable.   Id. ¶¶ 4-6.

## II.  Procedural History

Plaintiffs filed this suit seeking a nationwide class action on August 10, 2022.   See ECF No. 1.   Two months later, defendant sought permission to dismiss the complaint for lack of standing, failure to comply with the MMWA's jurisdictional requirements, and failure to state a claim, and to move to strike the class allegations.   See ECF Nos. 15-16.   In turn, plaintiff[4] indicated that it intended to file an amended complaint, see ECF No. 17, which the Court permitted, and which plaintiff then filed on November 10, 2022, see ECF No. 21.[5]   Once again, defendant sought leave to file the same motion that it outlined in its earlier

---

[4] At this point, the only named plaintiff was Abigail Shaughnessy.

[5] The First Amended Complaint added, among other things, Pathak and Alegre as named plaintiffs and the causes of action for violation of the Massachusetts Unfair and Deceptive Business Practices Act and New York General Business Law § 349.  See ECF No. 21.

letter and plaintiffs requested another chance to amend the complaint. See ECF Nos. 22-23. After the Court granted permission for plaintiffs to amend and defendant subsequently to move, the plaintiff filed the Second Amended Complaint, which is now the operative complaint. See ECF No. 31.

The Second Amended Complaint asserts seven causes of action: (1) violation of the Magnuson-Moss Warranty Act; (2) unjust enrichment; (3) fraud; (4) fraudulent omission; (5) declaratory judgment; (6) unfair or deceptive trade practices under the Massachusetts Unfair and Deceptive Business Practices Act; and (7) deceptive practices under New York General Business Law § 349. It then seeks a nationwide class of "all purchasers of Nespresso Vertuo branded products in the United States with warranty provisions that prohibit self-repair and/or the use of unauthorized parts," SAC ¶ 53, as well as a subclass of plaintiffs who purchased the Machine in Massachusetts and a subclass of plaintiffs who purchased it in New York, id. ¶¶ 54-55.

On January 20, 2023, defendant filed the present motion to dismiss the Second Amended Complaint or, in the alternative, to strike the class allegations. Defendant's submission included a memorandum of law and the declaration of defendant's counsel, Adam Lurie. See ECF Nos. 32-34. A month later, plaintiffs filed their

memorandum of law in opposition ("Pls. Opp."), see ECF No. 35, along with the declaration of plaintiffs' counsel, Julian Diamond, see ECF No. 36. Finally, defendants replied on March 10, 2023. See ECF No. 37. While the motion was pending, defendant wrote to the Court on three separate occasions to inform us of recently decided caselaw that it believed was relevant to this Court's determination.[6] See ECF Nos. 38, 40, 43. Plaintiffs responded to the first and third submissions. See ECF Nos. 39, 42.

## DISCUSSION

We analyze defendant's motion to dismiss, beginning first with defendant's argument that plaintiffs' lack Article III standing. Because we hold that there is no standing, we need not rule on the remainder of defendant's 12(b)(6) motion. However, before addressing defendant's motion, we first review the applicable federal and state regulatory schemes implicated by plaintiffs' challenges to defendant's warranty.

---

[6] Specifically, defendant brought to the Court's attention Konkel v. Brother International Corp., No. 22-cv-479, 2023 WL 3585354 (D.N.J. May 22, 2023), see ECF No. 38; Rowland v. Bissell Homecare, Inc., Nos. 23-cv-1940, 23-cv-1941, 23-cv-1955, 23-cv-1960, 2023 WL 4419370 (3d Cir. Jul. 10, 2023), see ECF No. 40; and Ghaznavi v. De'Lhonghi America, Inc., No. 22-cv-1871, 2023 WL 4931610 (S.D.N.Y. Aug. 2, 2023), see ECF No. 43.

## I.    Federal and State Regulatory Schemes

### a.    The Magnuson-Moss Warranty Act

Central to the case is the Magnuson-Moss Warranty Act ("MMWA" or the "Act"), which is a federal statute that regulates consumer warranties.  Relevant to this action, the MMWA contains an anti-tying provision that prohibits a warrantor from "condition[ing] his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name."  15 U.S.C. § 2302(c).

While the Act bans explicit tying, the Federal Trade Commission ("FTC") has promulgated regulations which interpret the Act to also prohibit implicit tying, stating: "[W]arranty language that implies to a consumer acting reasonably in the circumstances that warranty coverage requires the consumer's purchase of an article or service identified by brand, trade or corporate name is similarly deceptive."  16 C.F.R. 700.10(c).[7]  For instance, provisions that state "[t]his warranty is void if service is

---

[7] The Second Circuit has not yet ruled whether this FTC regulation is entitled to <u>Chevron</u> deference.  That being said, neither side has challenged the level of deference and in fact both parties rely on this same regulation.  <u>See</u> Def. Br. at 11; Pls. Opp. at 12.  Further, because the Court does not reach the merits of this cause of action, we need not rule on the application of <u>Chevron</u> deference.

performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts" or "use only 'ABC' dealer" or "use only 'ABC' replacement parts" are prohibited.  <u>Id.</u>

Nevertheless, a warrantor can limit liability for damage caused by unauthorized parts or modifications.  The same FTC regulation states:  "This does not preclude a warrantor from expressly excluding liability for <u>defects or damages caused by 'unauthorized' articles or service</u>; nor does it preclude the warrantor from denying liability where the warrantor can demonstrate that <u>the defect or damage was so caused</u>."  <u>Id.</u> (emphasis added).

The FTC is then empowered to send compliance letters and take enforcement actions when a warranty violates this provision.  For instance, in a recent adjudication, the FTC challenged a Harley-Davidson warranty that was voided by the use of any non-Harley-Davidson parts, regardless of whether the unauthorized parts caused the defect.  <u>See</u> <u>Harley-Davidson Motor Co., Grp, LLC</u>, F.T.C. Docket No. C-4778 (Oct. 21, 2022), https://www.ftc.gov/legal-library/browse/cases-proceedings/212-3140-harley-davidson-motor-company.

**b.   Section 5 of the FTC Act**

In addition to the MMWA, Section 5 of the FTC Act ("Section 5") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair deceptive actions or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). The FTC is tasked with enforcing this statute.[8]   15 U.S.C. § 45(a)(2).

Violations of Section 5 in the warranty tying context are largely duplicative of the MMWA, as a violation of the MMWA is a violation of Section 5 of the FTC Act. 15 U.S.C. § 2310(b). The only additional liability created by Section 5 is that it also prohibits the creation of a false <u>impression</u> that a warranty would be void due to the use of an unauthorized part or service. 15 U.S.C. § 45(a); 80 Fed. Reg. 42710, 42713 (July 20, 2015). The FTC often relies on both the MMWA and Section 5 when it notifies a company that its warranty contains improper tying or seeks enforcement action.[9]

---

[8] There is no independent claim for violation of Section 5 of the FTC Act here, although, as discussed below, it is incorporated into the state deception causes of action. While the FTC has the power to enforce the act, 15 U.S.C. § 45(a)(2), there is no private right of action under Section 5. <u>Alfred Dunhill Ltd. v. Interstate Cigar Co.</u>, 499 F.2d 232, 237 (2d Cir. 1974).

[9] For reference, plaintiffs attach to the Second Amended Complaint several compliance letters sent by the FTC, notifying a company that their warranty is improper. <u>See</u> SAC, Exs. 1-6.

-11-

c.    **State Consumer Deception Statutes**

Finally, states have their own consumer deception statutes. Here, plaintiffs assert claims under the consumer deception statutes in Massachusetts, the Massachusetts Unfair and Deceptive Business Practices Act ("MUDBPA"), and in New York, the New York General Business Law ("NYGBL") § 349.  Each are discussed briefly below.

First, in Massachusetts the MUDBPA prevents "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  MASS. GEN. LAWS ANN. ch. 93A § 2 (West).  In determining what is deceptive, "courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a)(1) of the Federal Trade Commission Act."  Id.  A violation of the FTC Act or MMWA is then considered to be a per se violation of the MUDBPA.  940 MASS. CODE REGS. 3.16 ("[A]n act or practice is a violation [of the MUDBPA] if: . . . [i]t violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes").  Here, plaintiffs argue that the Massachusetts plaintiffs were "deceived by Defendant's warranty policies," because they contained unlawful restrictions under the MMWA and Section 5 of the FTC Act.  SAC ¶¶ 114-116.

Second, "Section 349 of the General Business Law, enacted in 1970 as a broad consumer protection measure, proscribes, '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York].'" Izquierdo v. Mondelez Int'l, Inc., No. 16-cv-4697 (CM), 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) (quoting N.Y. Gen. Bus. Law § 349(a)).  While NYGBL §349 does not include the same per se violation as MUDBP, a plaintiff makes a prima facie case under NYGBL § 349 if it demonstrates:  "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000).  To be misleading under the statute, the "act or omission must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Braynina v. TJX Cos., Inc., No. 15-cv-5897 (KPF), 2016 WL 5374134, at *5 (S.D.N.Y. Sept. 26, 2016) (quoting Orlander v Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)).  Similar to the MUDBPA claim, plaintiffs allege that defendant deceived plaintiffs because "Defendant failed to disclose that the Product's repair restriction was unlawful and unenforceable."[10]  SAC ¶ 128.

---

[10] In addition, the Second Amended Complaint also asserts common law claims for fraud, fraudulent omission, and unjust enrichment, as well as a claim for

-13-

## II.  Standard of Review

Defendant moves to dismiss this action under both Rule 12(b)(1) and Rule 12(b)(6) for failure to state a claim.[11]  Fed. R. Civ. P. 12(b)(1), (6).  "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first."  Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (internal citations and quotation marks omitted).

To defeat a Rule 12(b)(1) motion, a plaintiff must establish subject matter jurisdiction by a preponderance of evidence.  Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000).  This means that a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue."  Amidax Trading Grp. V. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  In considering such a motion, the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

---

declaratory judgment.  These are likewise premised on the violation of the MMWA and Section 5.

[11] Defendant also moves in the alternative to strike the class allegations in the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D).  Def. Br. at 24.  Because the Court, as discussed below, grants the motion to dismiss, the Court need not reach the motion to strike and therefore the legal standards applicable to such a motion are not addressed.

Similarly, to survive a motion under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  While the Court accepts the truth of the allegations as pled, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice and we are not bound to accept as true a legal conclusion couched as a factual allegation." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (internal citations and quotations omitted).

**III. Article III Standing**

As it must, the Court first analyzes whether it has jurisdiction to even consider the merits of the case.  Defendant argues that plaintiffs have not experienced any concrete harm related to the alleged unlawful warranty, and that their alleged injuries are, if anything, injuries in law, not in fact.  Def. Br. at 6.  The Court agrees.

In evaluating standing in a class context, we evaluate the standing of the class representatives.  1 Newberg & Rubenstein on Class Actions § 2:1 (6th ed.).  Article III standing requires that plaintiffs have (1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct, and (3) that can be redressed by a favorable decision.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  An injury-in-fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  Id. at 339 (internal quotation marks omitted).  However, a "bare procedural violation" that is "divorced from any concrete harm" is not an injury under Article III.  Id. at 341.  Put simply, "under Article III, an injury in law is not an injury in fact."  TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021).

As an initial matter, the parties agree that at no point did plaintiffs attempt to exercise the warranty and were denied. Further, there is no indication that their Machines malfunctioned in any way.  Thus, based on their own allegations, plaintiffs have not suffered a concrete harm as a result of the alleged unlawful warranty.  Instead, plaintiffs attempt to claim purely economic injuries, which take two forms.  First, plaintiffs claim that they would not have purchased the Machines, or would have paid less, had they known that the warranty was unlawful. SAC ¶¶ 9, 11, 13. And second, plaintiffs state they purchased the more expensive Nespresso Vertuo Capsules in order to comply with the warranty. Id. ¶¶ 10, 12, 14.

Arguments that a plaintiff would not have purchased a product or would have spent less are often referred to as the "price premium theory" and typically arise in the context of product labeling cases.  See Axon v. Florida's Nat., Growers, Inc., 813 F. App'x 701, 703-704 (2d Cir. 2020); Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021).  However, there is limited caselaw evaluating this theory in the context of an unlawful product warranty.

Plaintiffs rest their argument on Schaer v. Newell Brands Inc., No. 22-cv-30004(MGM), 2023 WL 2033765 (D. Mass. Feb. 16, 2023), in which a district court evaluated whether a plaintiff who bought a Mr. Coffee Maker with an allegedly unlawful warranty had standing to sue.  The warranty in the case was voided by any unauthorized repair.  Id. at *1.  Plaintiffs rely on this case for the proposition that "a product that contains an unlawful warranty . . . is worth less than a product that does not contain such a restriction" and that "[t]his, is and of itself would be an injury in fact."  Pl. Br. at 5 (quoting Schaer, 2023 WL 2033765, at *1) (alterations in original).  However, plaintiffs strategically fail to quote the key fact in that sentence.[12]  The court in Schaer

---

[12] The full quote in Schaer is "a product that contains an unlawful warranty – *that is voided by any attempt to repair or adjust any electrical or mechanical*

-17-

determined that there was a concrete injury because the plaintiff's machine began to "slightly malfunction" and the plaintiff "performed minor disassembly . . . to fix the issue." Id. This attempt to fix the machine voided the warranty and voiding the warranty caused the product to lose value, creating the economic harm and, accordingly, an injury under Article III. Id. Here, there was no similar attempt.

More on point is Judge Failla's decision in this Court which found that there was no standing in the context of a warranty which had not been voided. In Ghaznavi v. De Longhi Am. Inc., No. 22-cv-1871 (KPF), 2023 WL 4931610 (S.D.N.Y. Aug. 2, 2023), the named plaintiff similarly had purchased a coffee maker that he alleged contained an unlawful warranty. The coffee maker "began to slightly malfunction," and plaintiff "wished to repair it himself, but did not because doing so would void the product's warranty." Id. at *2. In evaluating the plaintiff's harm, Judge Failla explicitly distinguished Schaer, stating the plaintiff in Scaher was injured because "the value of [the Schaer plaintiff's] coffee maker decreased (and thus she overpaid for it) as a result of her disassembly and the consequent voiding of the warranty." Id. at

---

functions – is worth less than a product that does not contain such a restriction." Id.

*4.  In contrast, the coffee maker in <u>Ghaznavi</u> "still retain[ed] its full value because the Warranty is currently operative."  <u>Id.</u> at *5.  The "[p]laintiff ha[d] not voided [the warranty] by attempting to repair [the machine] himself or tak[ing] it to an unauthorized repair shop," and "ha[d] not yet incurred any expense in complying with the warranty" (<u>i.e.,</u> paying for shipping to defendant for repair).  <u>Id.</u>  Further, there were no allegations of any "imminent future plans to void [the warranty] or to incur shipping expenses."  <u>Id.</u>

Further, Judge Failla declined to extend the caselaw regarding the "premium price" theory from the consumer labeling cases to the present warranty dispute.  She noted that the representation that a warranty is enforceable is implied, not explicit.  <u>Id.</u> at 6.  Moreover, in her view with which this Court agrees, the representations in consumer labeling cases are fundamentally different, as they are "representations about a product's nature, effects, or origin – the truth of a representation may not be knowable . . . at the time of sale."  <u>Id.</u>  In contrast, the warranty in <u>Ghaznavi</u>, as is the case here, was available to the plaintiff on the defendant's website and thus knowable prior to purchase.  SAC ¶¶ 9, 11, 13.

Finally, Judge Failla noted that "threadbare and conclusory allegations" that a plaintiff would have purchased the product at a reduced price had he known about an improper warranty are insufficient to establish injury.  Id. (citing Konkel v. Brother Int'l Corp., No. 22-cv-479 (ZNQ) (RLS), 2023 WL 385354, at *6 (D.N.J. May 22, 2023).[13]  Ultimately, Judge Failla determined the injury "plainly falls within the category of bare procedural violations that alone are insufficient to confer standing."  Id. at *5.

At bottom, we agree with Judge Failla and reject plaintiffs' first theory of injury.  A plaintiff alleging that he would not have purchased the product or would have paid less in a warranty case does not experience a concrete economic injury unless the warranty was voided.  Here, plaintiffs never attempted to modify the machine or take any action that could have voided the warranty.  Further, there is no risk that plaintiffs will void the warranty in the future, because by the time the Second Amended Complaint

---

[13] Defendant's first notice of supplemental authority informed the Court of Konkel, which had been recently decided in the District of New Jersey.  See ECF No. 38.  Parallel to our case, plaintiffs in Konkel alleged that they were injured because they would have purchased the printers at issue at a "substantially reduced price" if they had known about the allegedly unlawful repair restriction.  Konkel, 2023 WL 385354, at *6.  Ultimately the court found this was insufficient to create standing because the complaint "notably lack[ed] any allegations that Plaintiffs attempted to actually repair the printers themselves, and thereby void the Warranties."  Id.

was filed, the named plaintiffs' warranties had expired. <u>See</u>
<u>Ghaznavi</u>, 2023 WL 4931610, at * 5 ("[T]he Court would be more
amenable to finding standing had Plaintiff alleged imminent future
plans to void the [] [w]arranty or to incur shipping costs.")

In response to <u>Ghaznavi</u>, plaintiffs attempt to resurrect
their case by claiming it "has no relevance to Plaintiff's [sic]
second theory at all" -- namely, that plaintiffs were harmed by
purchasing the more expensive Nespresso capsules.  Pls. Response
to Def. Third Notice of Supplemental Authority at 1, ECF No. 42.
Plaintiffs argue that they have "already incurred the costs of
complying with the warranty because Defendant's written warranty
forced plaintiff to 'purchas[e] several Nespresso branded Coffee
Capsules at inflated prices.'" <u>Id.</u> at 2 (quoting SAC ¶¶ 10, 12,
14) (alteration in original).  Even assuming that the purchase of
these capsules constituted costs of complying with the warranty,
the facts in plaintiffs' complaint in and of themselves defeat the
argument.[14]

---

[14] The Court is not convinced the purchase of capsules should be considered
"costs of complying with a warranty."  Judge Failla noted in <u>Ghaznavi</u> that
"plaintiff has not yet incurred any expense in complying with the Warranty; he
has not, for instance, shipped the Coffee Maker to [defendant] for repair and
so has not paid for shipping, insurance, or other incidentals that would
certainly be cognizable economic injuries." <u>Ghaznavi</u>, 2023 WL 4931610 at *5.
Shipping costs to send a malfunctioning device back to the manufacturer in order
to be repaired are different in kind from the costs to buy coffee capsules that
are needed to use the machine whether or not the machine is malfunctioning.

-21-

The Second Amended Complaint states that while Nespresso Vertuo capsules are double the price of other capsules, they are the <u>only capsules</u> which are compatible with the machine. SAC ¶¶ 3-5. To use any of these other capsules, a consumer would need to modify the machine.[15]   <u>Id.</u> ¶ 6.   Thus, the comparison to other capsules is simply a false one.  Plaintiffs cannot credibly claim to have been harmed by this warranty, because even absent the warranty, plaintiffs would still have purchased the Nespresso Vertuo capsules, as the market provided no other option at that time.  Any further argument that plaintiffs should be permitted under the warranty to jerry-rig the machine to fit incompatible capsules could not be made seriously.

Therefore, the Court finds that plaintiffs lack standing and defendant's motion to dismiss is granted.[16]   The case is thus

_____

That being said and as discussed above, there are more fundamental issues with plaintiffs' argument.

[15] While plaintiffs attempt to argue in their papers that the difference between the Nespresso Vertuo capsules is the "ornamental design," Pls. Opp. at 4 n.1, this contradicts the explicit allegations in the Second Amended Complaint. <u>See</u> SAC ¶¶ 4-6 ("The competing brands of coffee capsules described above are not compatible with the Products"; "In fact, there are no third-party capsules which are compatible with the Products"; "In order to get third-party capsules to work with the products, a user would need to modify the Products.")

[16] The Court finds that there is no standing for all seven causes of action in the Second Amended Complaint, because all of the claims are premised on the same "bare procedural" violation -- that the warranty is unlawful.   For instance, all of the common law claims are based on defendant's alleged representation that the warranty was lawful, or alternatively, that defendant failed to state the warranty was unlawful.  SAC ¶¶ 82, 88, 94.  Further, plaintiffs experienced the same alleged harm for all claims -- that they would not have purchased or would have spent less on the machine and would not have

-22-

dismissed without prejudice.[17] <u>Carter v. HealthPort Techs., LLC</u>, 822 F.3d 47, 54-55 (2d Cir. 2016).

## IV.  **Defendant's Other Motions**

Defendant also moved to dismiss under Rule 12(b)(6).  Once a court finds that there is a lack of Article III standing, it "lacks the power to adjudicate the merits of the case" and "to dismiss a case with prejudice."[18]  <u>Id.</u>  Similarly, the Court need not address

---

purchased the more expensive Nespresso Vertuo Capsules.  <u>See id.</u> ¶¶ 82, 90, 96, 119, 132.

[17] Given the Court's ruling on standing, it need not address defendant's other 12(b)(1) argument that the Court lacks jurisdiction because plaintiffs failed to abide by the MMWA's jurisdictional requirement of naming 100 plaintiffs.

[18] That being said, the Court feels compelled to note that plaintiffs' lack of standing is not the only deficiency.  The Court is skeptical that the warranty here is unlawful in the first instance.  Plaintiffs argue that the warranty improperly tied the validity of the warranty to the use of the Nespresso Vertuo Capsules and the limited guarantee prohibits modification of the machine to fit the third-party capsules.

First, the limitations on the guarantee are precisely the kind of restrictions permitted under the FTC regulations.  While warrantors cannot disclaim liability carte blanche, the FTC explicitly permits warrantors to "exclude[e] liability for defects or damage caused by 'unauthorized' articles or service; nor does it preclude the warrantor from denying liability where the warrantor can demonstrate that the defect or damages was so caused."  16 C.F.R. § 700.10(c).  That is precisely what Nespresso has done here.  The Limited Guarantee merely states that Nespresso will not guarantee "any defect <u>resulting from</u> . . . failure to follow product instructions . . . [or] unauthorized product modification or repair."  Manual at 33 (emphasis added).  Therefore, Nespresso is not responsible for damage a consumer causes by, for example, jamming an incompatible capsule into the machine or by modifying the machine in an attempt to use these incompatible capsules.  Not only does this comport with the FTC guidance but it seems entirely reasonable.

The enforcement actions cited by plaintiffs are not controlling on this Court and do not refute this conclusion.  In those cases, the warranties attempted to avoid any responsibility if an unauthorized part or repair was used, regardless of whether the defect was actually caused by the unauthorized part or repair.  <u>See Weber-Stephen Prod. LLC</u>, FTC Docket. No. C-4775 (Sept. 14, 2022), https://www.ftc.gov/legal-library/browse/cases-proceedings/2123139-weber-stephen-products-llc; <u>Harley-Davidson Motor Co., Grp, LLC</u>, FTC Docket No. C-

defendant's alternative argument that the class action allegations should be stricken, and the motion is denied as moot.  Izquierdo, 2016 WL 6459832, at *10.

**CONCLUSION**

Accordingly, for the reasons stated above, defendant's motion to dismiss is granted and its motion to strike is denied as moot. As such, the Clerk of the Court is respectfully directed to close the motion pending at ECF No. 32, enter judgment for defendant, and close the case.


**SO ORDERED.**


Dated:   New York, New York
         September 15, 2023

                                      NAOMI REICE BUCHWALD
                                      UNITED STATES DISTRICT JUDGE

---

4778  (Oct.  21,  2022),  https://www.ftc.gov/legal-library/browse/cases-proceedings/212-3140-harley-davidson-motor-company;  MWE Investments, LLC, FTC Docket  No.  C-4774  (Aug.  11,  2022),  https://www.ftc.gov/legal-library/browse/cases-proceedings/222-3012-westinghouse-outdoor-power-equipment-mwe-investments-llc.

Second, there is no reference to the Capsules in the Limited Guarantee.  The use of Nespresso Capsules is only referenced in the context of explaining how to use the Machine or cautioning against the use of other capsules to prevent injury.  For instance, while plaintiffs quote, "Only use capsules intended for this appliance," SAC ¶ 71, it is followed by "if the capsule does not fit do not force the capsule into the appliance" and is under "WARNING: risks of injuries if you don't use this appliance correctly," Manual at 5.  These references do not appear to implicitly condition the warranty on the use of the Nespresso Capsules.